BERNARD SLEVIN, Trustee, &c., Plaintiff in Error, v. JOHN BROWN, Defendant in Error.

*Ejectment—Judgment, bar of.*—A judgment in an action of ejectment is no bar to the prosecution of another suit for the recovery of the same premises. The provision of R. C. 1855, p. 695, § 33, was repealed by act of November 21, 1857. (Acts 1857, p. 34.)

*Uses, statute of.*—The statute of uses does not apply to chattels real. (R. C. 1855, p. 354, § 1.)

*Wife's Estate.*—Where the legal title in a leasehold estate in lands was vested in a trustee for the benefit of the wife, the death of the wife will not prevent the trustee from recovering the possession of the property in ejectment. The legal title remains in the trustee.

### Appeal from St. Louis Land Court.

This is an action, in the nature of an action of ejectment, to recover the possession of a lot of land in block 145, in the city of St. Louis, commenced in the St. Louis Land Court, on the 22d day of September, 1858.

The defendant in his answer denies the allegations in the petition, which, of course, puts the plaintiff on proof of his right to recover. The cause was tried by the court below without a jury.

The defendant admitted that he was in the possession of the premises in controversy at the time of the commencement of this suit, and that he was then, and had been, in the possession thereof ever since the 6th of September, 1858.

Both parties claim under a lease from John Biddle to Anthony Tiernan, dated October 1, 1852, for the term of nine years and nine months, renewable for the term of ten years longer after the expiration thereof.

On the 22d of January, 1853, Anthony Tiernan, for value received, assigned the lease to Bernard Slevin, the plaintiff in this suit, in trust for his (Tiernan's) wife, Catharine Tiernan, for her use and benefit during the term. (See opinion.)

Both the lease and the assignment were properly acknowledged and recorded November 26, 1853.

During the fall of 1854, Anthony Tiernan became indebted

to one Thomas Burke for the sum of eighty-five dollars and sixty-one cents, for which Burke obtained judgment against Tiernan, on the 29th of August, 1855, before a justice of the peace of St. Louis county. The justice issued an execution on the judgment, which was returned *nulla bona* by the constable, on the 22d of October, 1855. A transcript of the judgment of the justice was, on the 30th of November, 1855, filed with the clerk of the St. Louis Land Court, who issued an execution thereon to the sheriff of St. Louis county, dated November 30, 1855. The sheriff, on the 4th day of February, 1856, sold the premises in controversy, as the property of Anthony Tiernan, under the execution issued to him by the clerk of the Land Court, and the defendant, John Brown, bought the land at the sale, and received a deed from the sheriff therefor. The title, therefore, of the defendant is under the sheriff's sale of the lease in 1856, for a debt of Tiernan's, which originated in the fall of 1854; and the title of the plaintiff is acquired by an assignment of the same lease, dated in the beginning of the year 1853, and recorded in the same year.

On trial, the plaintiff gave evidence tending to show that Slevin held possession of the premises as the trustee of Mrs. Tiernan, by virtue of the assignment of the lease in 1853, until September, 1858, when he was turned out of possession by the sheriff, under a writ of possession in favor of John Brown, against the tenants of Slevin; but Slevin was no party to the suit. The plaintiff read the lease and assignment in evidence.

Testimony was also introduced by the defendant by which he attempted to show that Tiernan was insolvent from 1852 to 1856, at the time of the assignment of the lease, and at the time of the sheriff's sale. The defendant also attempted to show that the plaintiff knew of the suit against his tenants; but nothing was offered to show that the plaintiff was a party to the suit.

The defendant then read in evidence the record and proceedings of the St. Louis Land Court, in the suit before mentioned,

which was brought by John Brown against Anthony Tiernan, James Score, and Mary Cotton, the tenants of Slevin, the plaintiff in this suit; and the plaintiff at the time objected to the reading of the record and proceedings, on the ground of the evidence being incompetent and irrelevant.

For instructions see opinion.

*Casselberry*, for plaintiff in error.

I. The first point presented in this case is as to the effect and admissibility of the record in the suit in the St. Louis Land Court brought by John Brown against Anthony Tiernan, James Score, and Mary Cotton, the tenants of Bernard Slevin.

As Mr. Slevin was no party to the suit against his tenants, he is not bound thereby; nor is the record evidence in this case for any purpose whatever; and for this reason the court below erred in admitting the record in evidence, and in giving the instruction that the judgment in that case is a bar to the action of the plaintiff in this case.

It is certainly a plain elementary rule of law that no one is bound by a legal proceeding to which he is no party.

A judgment against a person who had no notice of the pendency of the suit in which it was rendered, or who is no party to it, is absolutely void. (Bascom v. Young, 7 Mo. 1; Smith v. Ross, 7 Mo. 463; Anderson v. Brown, 9 Mo. 646.)

II. But, even if Slevin had been a party to the suit, it was a mere action of ejectment and would not bar another action of ejectment; that is to say, one action of ejectment is no bar to another action of ejectment between even the same parties. (Adams on Eject., 4 ed., top page 420.) At one time this principle was doubted, but we have now at least the following tacit recognition of the rule by the Legislature, that is to say, the Revised Statutes of 1855, (vol. 1, p. 695, § 33, tit. Ejectment,) provide that a judgment in ejectment shall be a bar to any other action of ejectment between the same parties as to the same subject matter; and the act of November 21, 1857, (p. 34, adjourned session,) repealed the 33d section of the act of 1855. By these two acts of the Legislature, we

have the views of the legislative department on the subject, as well as judicial authority. The action, therefore, of the court below in admitting the record, and in giving the instruction that the plaintiff is barred thereby, is a plain, glaring, blunt error; and for this reason alone, if there were no other, this cause ought to be reversed and remanded.

III. The proceedings of John Brown against Slevin's tenants being void as to Slevin, as he was no party thereto, did not, in any manner, give Brown any more or greater right or title to the premises than he had before the commencement of the proceedings; and if he had no title at all, he was a mere trespasser. When the sheriff delivered possession, the plaintiff acted on his own peril. (Adams on Eject., 4 ed., pp. 342, 389, 391.) As Slevin was in the peaceable, quiet possession of the premises, he was, even without showing any title papers, entitled to recover against Brown, who had no title, and who was a mere trespasser or intruder. (Crocket v. Morrison, 11 Mo. 1.)

IV. The second instruction says that "whatever might have been the effect of the assignment made by Anthony Tiernan to Bernard Slevin of the lease in question, while Catharine Tiernan was alive, she being dead, the said Slevin has now no such interest as will enable him to recover the possession of said premises in this action."

a. One reason advanced by the counsel for the defence was that the assignment fell within the provisions of the statute of uses, and was executed by the statute, so that Slevin had no title in him; that is to say, when Tiernan assigned the lease to Slevin, for the use of his (Tiernan's) wife, the statute of uses tranferred the legal title to Mrs. Tiernan, which vested in her all of the title, both legal and equitable, leaving no title whatever of any kind in Slevin to enable him to recover in this action. But in answer to all this, we assert, fearless of successful refutation, that the statute of uses does not apply to leases or leasehold interest of any kind. (2 Black., s. p. 336; 4 Kent, 302, 6 ed.; Sanders on Uses, vol. 1, s. p. 86, 87 & 89; Adams on Eject., t. p. 132, s. p. 88, 4 ed.)

As the interest of Mr. Slevin is a leasehold interest, the statute of uses has no application to this case, which will be fully seen and understood by reading the authorities above quoted. The statute of uses of 1845 of Missouri, which was in force in 1853, at the time of the assignment of the lease, is similar in all its provisions to the English statute of uses of 27 Henry VIII., chap. 10, on which the foregoing authorities are based. The statute of uses was discussed at considerable length in 19 Mo. 147, which may have some bearing in favor of the plaintiff. (See, also, 4 Kent 496, and Sanders on Uses, vol. 2, p. 58.)

*b.* It was also contended by the defendant in the court below that Tiernan had an interest in the equitable estate of Mrs. Tiernan, because the assignment did not in effect state that the property was to be enjoyed by her separate and apart from her husband. Where third persons convey an estate of inheritance to a trustee for the use of a married woman, her husband has a life estate in the land, called a *curtesy,* unless the deed contains expressions indicating that it is to be enjoyed by her separate and apart from her husband, or free from his control or interference; but this principle does not apply where the husband himself conveys an estate of inheritance to a trustee for the benefit of his wife. (26 Conn. 226.)

The principle in this case, last cited, is that the husband is estopped by his own deed. If he conveys to another all of his right, title and interest for the benefit of his wife, the law will not allow him to deny or contradict his own deed, by claiming an interest in the same land which he conveyed by the deed itself.

*c.* The husband, however, has no life estate, or curtesy, in any of the real estate of his wife, except where she owns an estate of *inheritance* in the land—that is, an estate in fee simple. (2 Black., s. p. 126; 4 Kent, 26.) As the interest, therefore, held by Slevin in trust for Mrs. Tiernan is a mere leasehold interest, the husband had no curtesy, or any other interest whatever, in the property.

Slevin, Trustee, v. Brown.

V. It may be that the court below intended to convey the idea that a trustee could not sue, but the most undoubted authorities go to establish the doctrine that a trustee can sue without joining the beneficiary with him—Adams on Ejectment, 4 edition, 127 ; and the same author holds that a trustee can maintain an action of ejectment even against the beneficiary. (Adams on Ejec., 4 ed., p. 43.) So, Slevin having the legal title, could even bring an action against all or any of the legal representatives themselves of Catharine Tiernan, if they were in possession.

VI. The second instruction seems to convey the idea that the trusteeship of Slevin ceased when Mrs. Tiernan died. We are wholly unable to see how the court came to such a conclusion. John Biddle has parted with the property for nine years and nine months. Anthony Tiernan parted with his interest for the whole term. So neither Biddle nor Tiernan can claim the lot; and as Mrs. Tiernan left children to inherit her property, it did not escheat to the State. Then, who is entitled to it? Certainly Slevin holds it as trustee for the equitable representatives of Mrs. Tiernan, in the same manner and under the same rules and regulations as he held the property for Mrs. Tiernan in her life-time. (Gibbons and others v. Gentry, 20 Mo. 468 ; Blue v. Peneston, 24 Mo. 240.)

VII. An attempt was made by the defendant to show that Tiernan was insolvent in 1853, at the time of the assignment by him to Slevin.

a. But no evidence was introduced, or even offered, to contradict the evidence produced by the plaintiff, which shows very plainly and unquestionably that the consideration money that was paid for the assignment was not the money of Tiernan, but was money saved by Catharine Tiernan out of her own earnings, and out of the gifts and presents made to her by her parents. It is wholly immaterial, therefore, as to whether Tiernan was solvent or insolvent. An insolvent man can, in good faith, sell his property, as well as a solvent one ; and the purchaser will get an unquestionable title to the property as well in one case as the other.

*b.* As no fraud was set up in the answer, none could be given in evidence. To attack the conveyance for fraud, requires a proceeding in the nature of a proceeding in equity; and a cause of action in equity has to be specially set forth, and issues made on the subject in the same manner that issues were made up under the former chancery practice. (Vasquez v. Ewing, 24 Mo. 31.)

*c.* But even if the proper issues had been made, and sufficient proof had been produced on the subject of fraud, it would have no application in this case, because the debt under which the property was sold, as the property of Tiernan, was not contracted by Tiernan until the latter part of 1854, nearly two years after the assignment. The statute of 1845, to prevent fraudulent conveyances, (which is similar to the English statute of 27 Elizabeth,) speaks, it is true, of " prior and subsequent creditors," but from the whole law it will be seen that it is only for the benefit of those who are defrauded or injured by such conveyances. It is an elementary rule of law that no one can be allowed to entertain a suit, or action of any kind, who is not injured in any manner. The term *subsequent* creditors, therefore, as used in the act of 1845, is only intended to include such subsequent creditors as have been, in some manner or other, injured by a fraudulent conveyance.

The better American doctrine seems to be that voluntary conveyances of land *bona fide* made, and not originally fraudulent, are valid against subsequent purchasers. (Jackson v. Town, 4 Cowen, 603, 604; Ricker v. Ham, 14 Mass. 139; Cathcart v. Robinson, 5 Peters U. S. Rep. 280 ; 4 Kent, 464.)

*Mc Clelland, Moody & Hillyer,* for defendant in error.

I. This action is barred by the judgment rendered by the Land Court, May 19, 1858, in favor of Brown v. Tiernan, &c. Tiernan was in possession, not accounting to Slevin, up to the time that suit was brought, and to about the time of the trial and judgment. Slevin testified at that trial, and his title was set up as an outstanding title.

II. The leasehold assigned is for a term less than twenty years, and is a chattel interest which passes to the administrator, and not to the heir.

At common law, all leasehold estates passed to the administrator, and we have no statute changing this when the term is less than twenty years.

At the death of Catharine Tiernan, the interest assigned and all the purposes of the trust ceased, and the leasehold title remained as if no assignment had been made. (Hill on Trustees, 340.)

III. The effect of the assignment, if not in fraud of the creditors, is, by the statute of uses, a mere trust in Slevin, and, therefore, a direct grant to Catharine Tiernan. No power is given to Slevin to take possession; and he, therefore, cannot take possession nor maintain this suit.

IV. A grant by husband to wife, during coverture, is void in law. It will be sustained in equity only when shown to be consistent with the rights of creditors. (10 Pet. 583; 7 J. C. R. 57; 2 Swanst. 97, 113.)

V. The assignment was without any consideration, and made for the uses of Anthony himself; and was, therefore, void as against prior and subsequent creditors and purchasers. The money paid was Tiernan's money, and was paid by Slevin to Tiernan and wife. A husband has no power, while indebted, to convey his real estate to a trustee for his wife, even for its cash value, and then expend the money in improvements for her benefit. (2 Kent, 143; Clancy, Husband & Wife, 3.)

BATES, Judge, delivered the opinion of the court.

This was an action of ejectment for the possession of certain leasehold premises in the city of St. Louis, held for a term less than twenty years. The plaintiff claimed under an assignment of the lease from Anthony Tiernan, as follows:

" *State of Missouri, County of St. Louis, ss.*

" Be it remembered, that, on this 22d day of January, 1853, I, Anthony Tiernan, do hereby transfer the foregoing lease, with all its advantages, together with all its liabilities, to Ber-

nard Slevin, as trustee for Catharine Tiernan, and for her use and benefit during the term of said lease, for and in consideration of the sum of nine hundred dollars, to me in hand paid by said Catharine Tiernan, receipt of which is hereby acknowledged.

" In witness whereof, &c.

" ANTHONY TIERNAN, [L. S.]"

Catharine Tiernan was the wife of Anthony Tiernan, and had died before this suit was brought. Some evidence was given tending to show that the assignment of the lease was made in fraud of creditors of Anthony Tiernan, and there was also given in evidence the record of a former action of ejectment of the present defendant, John Brown, against Anthony Tiernan, in and by which Brown recovered and received the possession of the same premises, which suit was commenced in September, 1857. The court gave the following instructions:

" 1. If the plaintiff in this case claims under Anthony Tiernan, and if the action brought by the defendant, John Brown, against Anthony Tiernan and others (the record of which is in evidence in this case) was brought for the recovery of the premises in question in this suit; and if the said Anthony Tiernan, or those claiming under him, set up as a defence in that action the identical claim of title on which the plaintiff now seeks to recover, then the judgment in that case in favor of Brown is a bar to this action.

" 2. Whatever might have been the effect of the assignment made by Anthony Tiernan to Bernard Slevin of the lease in question while Catharine Tiernan was alive, she being dead, the said Slevin has now no such interest as will enable him to recover the possession of said premises in this action."

Verdict was given for defendant.

We think both of the instructions given were erroneous.

As to the first instruction. The act for the recovery of the possession of lands of 1855, (vol. 1, R. C., p. 695,) in section 33, provides that a " judgment, except of non-suit, in an ac-

tion authorized by this act, shall be a bar to any other action between the same parties, or those claiming by or under them, as to the same subject matter." An act amendatory of that act, approved November 21, 1857, (Laws of adjourned session of 1857,) repealed the 33d section of the original act. We conceive this to be equivalent to declaring that such judgment is not a bar to another action.

As to the second instruction. The assignment by Tiernan to Slevin is not affected by the statute of uses, because it concerns a chattel only. It is not fraudulent *per se*. It may be fraudulent, but the fraud must be shown by extrinsic testimony, and is a question of fact. The assignment vested the legal estate in Slevin, and we are unable to see how that is affected by the death of Mrs. Tiernan. Her administrator may have the beneficial interest in the property, but the legal estate remains in Slevin until some act is done to divest it.

Judgment reversed and cause remanded. Judges Bay and Dryden concur.