KIMMEL *et al.*, *Appellants*, v. BENNA.

1. **Ejectment**: JUDGMENT: ESTOPPEL.    A judgment in ejectment is no bar to a second action between the same parties for the same property, whether the titles and defenses in both actions be the same or not.

2. **Quit-Claim Deed**: AFTER-ACQUIRED TITLE: PRESUMPTIONS.    A quit-claim deed will not convey an after-acquired title; and the subsequent deed will not furnish a reasonable presumption that, prior thereto an equitable inchoate right existed, which passed by the deed of quit-claim, when such presumption would be in direct contradiction to the facts proven on the trial

3. **Verdict**.  The verdict of a jury will be regarded as conclusive upon the facts by this court, when no evidence is preserved in the record.

*Appeal from Cape Girardeau Court of Common Pleas*—HON. HAMILTON G. WILSON, Judge.

AFFIRMED.

*Lewis Brown* for appellants.

1.  The reasons for the common law rule that one action in ejectment is no bar to another action upon the same cause of action, have ceased to exist, and the rule should cease also.  The ancient fiction of the confession of lease, entry and ouster, is wholly ignored by our statutes, and may be said to be positively forbidden.  There should be in consideration of public policy and settled law, an end to litigation, and when the same cause of action has once been litigated and decided, there ought to be an end to it.  The prevailing party would not be recompensed by the costs, with us, as was the case at common law, nor would the right to call upon the court, after one or two ejectments tried, to order a perpetual injunction, be sufficient.  Bring an equitable action to try the title to realty?  Our practice forbids it; our courts would not allow it.  Nor will, what was known as a bill *quia timet* obtain with us, for the statute points out a different rem-

edy and a different procedure. The reversal of *Carter v. Scaggs*, 38 Mo. 305, would not unsettle property or disappoint the confidence and trust in which property may be held under that decision, but, on the other hand, it would create greater confidence and trust. Tyler on Eject., 593; *Union R. R. Co. v. Traube*, 59 Mo. 362; *Wright v. Salisbury*, 46 Mo. 27; *Shelbina v. Parker*, 58 Mo. 329; Gresley's Ev., 433; *Hickerson v. Mexico*, 58 Mo. 61; *Gibson v. Chouteau*, 50 Mo. 86; *Brady v. Ervin*, 48 Mo. 534; *State v. Parkville, &c., R. R. Co.*, 32 Mo. 496; *Hopkins v. Lovell*, 47 Mo. 102; *Steines v. Franklin Co.*, 48 Mo. 167; 2 Wag. Stat., §§ 53, 54, 1022.

2. While the quit-claim to Vollmers would not operate by way of inurement to vest in him a title acquired by Waugh, after its date, yet, he would be estopped from relying on a title acquired from the United States, the State or the county, by reason of his certificate of purchase; his quit-claim is an equitable assignment of his interest and claim; and although the statutes of 1855 provided for the assignment of the certificate of purchase, the purchaser could assign his interest in any other manner he chose. The defendants are not in a position to assail the conveyance of Scott county to Waugh. *Bissell v. Penrose*, 8 How. 317; *Boone v. Moore*, 14 Mo. 420; *Connoyer v. Labeaume*, 45 Mo. 139; *Carpenter v. Rannels*, 45 Mo. 584.

3. As to the asserted claim of the defendants, certainly the *ex parte* affidavit of Claude Benna was no muniment or color of title; and the right, if any he ever had under it, became forfeited for want of payment. R. S. 1855 pp. 999, 1000, § 1; p. 995, § 6; p. 994, § 2; Wag. Stat., p. 867, *et seq.* The county of Cape Girardeau could not convey this land, although it may once have been situate within her territory. *State, &c., v. The Register*, 48 Mo. 60; *Abernathy v. Dennis*, 49 Mo. 468. Hence all the evidence as to the former boundary of the county should have been rejected. It will be seen that at the date of the sheriff's deed neither Waugh, Scott county nor the State

had any legal title to the realty in question. Hence, as Waugh had no vendible title, the sheriff's deed conveyed none. *White v. Davis*, 50 Mo. 333.

*Louis Houck* and *Linus Sanford* for respondent.

1.   One judgment in ejectment is no bar to another action between the same parties. *Holmes v. Carondelet*, 38 Mo. 551.

2.   In 1859, when Waugh made his quit-claim deed to Vollmers, he had no title. The title he acquired by patent in 1864 cannot inure to Vollmers. *Bogy v. Shoab*, 13 Mo. 365; *Valle v. Clemens*, 18 Mo. 486; *Van Renssclaer v. Kearney*, 11 How. 322. Hence, Vollmers and his grantees cannot claim the benefit of the subsequent title acquired by Waugh from Scott county; on the other hand, the deed by sheriff of Scott county, made in 1865, conveys to the Bennas all the right Waugh acquired by the patent of Scott county, dated in 1864. The title of the Bennas, independent of all other facts, would then seem to be the best.

3.   But the evidence in this case shows that Claude Benna went into possession in 1854 or 1855, and he held undisturbed possession, as far as the record shows, until Vollmers instituted his suit in Scott county in March, 1865, more than ten years afterward. Consequently he had acquired a good title under the statute. *Biddle v. Mellon*, 13 Mo. 335; *Blair v. Smith*, 16 Mo. 273; *Scruggs v. Scruggs*, 41 Mo. 242; *Nelson v. Brodhack*, 44 Mo. 600; *Fugate v. Pierce*, 49 Mo. 441.

NAPTON, J.—This was an action of ejectment, tried in the Cape Girardeau court of common pleas, to which court it was taken from Scott county. The petition averred an unlawful entry of defendant on the 5th day of January, 1874, on the northwest quarter of section 30, township 30, range 14 east, and was filed August 1st, 1874.

In addition to general denials, the answer set up as a

defense that on the 28th day of September, 1850, the land claimed in the petition was donated by the United States to the State of Missouri, as swamp land, and was subsequently by an act of the Legislature passed the 23rd day of February, 1853, donated by the State to Cape Girardeau county; that Claude Benna, the ancestor of defendants, was, on the 1st day of January, 1855, the head of a family, and on that day was living with his family on said land, and had cleared and put in cultivation a part of it, and built a house on it; that this land, at that date, was in Cape Girardeau county; that on the 21st day of April, 1858, said Benna filed his pre-emption claim with the clerk of the county court of Cape Girardeau county, claiming the right to purchase said land by virtue of his occupation, cultivation and improvements on the same; that afterwards said Benna tendered to the county treasurer $160 in full payment, &c.; that said Claude Benna has departed this. life, leaving children Saturna Benna and others, defendants in this action.

An additional defense was set up in the answer that in the month of January, 1855, and for a long time prior thereto, said Claude Benna, their ancestor, held and occupied said real estate under the laws of the State, and in the year 1858 said Claude Benna pre-empted said real estate from the county of Cape Girardeau, the said county being then the owner of said land; that said county of Scott pretending to own some interest in said real estate, in the year 1864, pretended to sell the same to one Alexander Waugh, and that said plaintiffs now claim under and from said Alexander Waugh; that after said pretended purchase said Waugh instituted an action of trespass in the circuit court of Cape Girardeau county, against said Claude Benna for an alleged trespass upon said real estate, and that said action came on to be tried in said court, and the title of said Waugh and Benna was fully litigated, and that in said action judgment was rendered in favor of said Benna, and they plead said adjudication as an estoppel to

the suit of plaintiffs. A further plea is, that said Claude Benna, and, since his death, said defendants have held adverse possession of said premises for ten years before the commencement of this suit.

The replication, in addition to a general denial of every allegation of defendant's answer, sets up that at the May term of the Mississippi circuit court, 1869, an action of ejectment on change of venue from Scott county was pending in that court; that in this action Henry Vollmers was plaintiff and Claude Benna, Joseph Benna and Eugene Benna were defendants; that in said action the same identical matters were in issue that these defendants now set up; that the verdict was for plaintiff, being that the said Vollmers was the owner and entitled to the possession of the real estate described in the present petition; that afterwards a judgment was rendered in accordance with said verdict, that the said Vollmers recover the possession of said real estate; that said action was taken by writ of error to the February term of the second district court, and was affirmed, and is still in full force, and said Vollmers, thereafter, obtained possession and retained the same until he sold and delivered said realty to the present plaintiffs, and that afterwards the defendants herein, against consent of plaintiffs herein, wrongfully and unlawfully entered.

On the trial the plaintiffs read in evidence a patent from Scott county to Alexander Waugh dated October 27th, 1864, for the land in controversy, and a quit-claim deed from Alexander Waugh to Henry Vollmers for said land dated November 21st, 1859, and a deed from Vollmers and wife to George G. Kimmel, dated May 14th, 1870, recorded June 10th, 1872, and a deed from George Kimmel and wife for an undivided half of said land to E. A. Kimmel, dated January 31st, 1871; also the opinion of the second district court affirming the judgment of the circuit court of Mississippi county in the case of *Vollmers v. Benna et al.* On the part of plaintiffs, it was established by parol evidence, that under the execution on the judgment in

favor of Vollmers, the sheriff of Scott county put Voll-
mers in possession of this land and turned out the Bennas,
and that Vollmers' tenants occupied the land in 1874, and
Kimmel bought of Vollmers in that year, and his ten-
ants occupied the land for three years afterwards; that on
the trial of the case of *Vollmers v. Benna* in the Mississippi
circuit court there was evidence in regard to the boundary
line between Scott and Cape Girardeau counties, which was
the main channel of the Big Swamp, and the title papers of
both parties were investigated. Benna's claim to a pre-
emption from Cape Girardeau county was in proof. A
surveyor testified that the land was, at the trial of the pres-
ent case, in Scott county.

The defendants gave-in evidence, objection being made
by plaintiffs and overruled, a deed dated 9th day of Octo-
ber, 1865, from the sheriff of Scott county for the land in
controversy, to Claude Benna. This deed was made in pur-
suance of a judgment rendered the 13th day of December,
1860, against Alexander Waugh, and an execution thereon
in 1865, and a levy in September of 1865 and a sale to
Benna. They also read in evidence the order of the Cape
Girardeau county court directing the county surveyor to
survey the south boundary of the county, and the report
of the surveyor detailing the difficulties of finding the main
channel of the Big Swamp. This was objected to as irrel-
evant, and for the reason that the matter was adjudicated
between H. Vollmers, grantor of plaintiff, and Claude
Benna, the ancestor of defendants. It appeared from oral
testimony that the deed from the sheriff of Scott county
to Claude Benna, conveying the title of Waugh in 1865,
was not offered in evidence in the case of *Vollmers v. Benna.*
The plaintiffs renewed their objections to the introduction
of any evidence tending to prove a title by pre-emption or
under the statute of limitations, or tending to prove that
the land in dispute was or was not over in Cape Girardeau
county, or tending to prove any pre-emption right in

Claude Benna. These objections were overruled by the court and the plaintiffs took exceptions.

The parol evidence of defendants showed that Benna, the father of defendants, had lived on this land since 1854; that the land was north of the main channel of the Big Swamp, and consequently in Cape Girardeau county until an act of the Legislature was passed (Sess. Acts 1865, pp. 310, 311,) establishing a new line between Scott and Cape Girardeau counties, and by this line locating the land in Scott county; that Claude Benna claimed this land in 1854 and went to Jackson, the county seat of Cape Girardeau county, to pre-empt this land, but the county court of Cape Girardeau refused to grant a title until the disputed boundaries were settled. In the meantime Alexander Waugh got, in 1864, a patent from Scott county, and in 1865 the land was located by the Legislature in Scott county.

The following instructions were given for plaintiff:

2. If the jury believe from the evidence that Vollmers obtained possession of the realty from the deputy sheriff of Scott county in his official character by virtue of a writ of restitution and judgment in ejectment, and that Vollmers transferred such possession to Kimmel, and if you further believe from the evidence that such possession lasted for three years or more in Vollmers and his grantee, Kimmel, then the defendants had no legal right to enter upon said land without the consent of Kimmel, and any such entry, without said consent, would be forcible and illegal, and you should find for plaintiffs unless defendants have established a title.

3. It is necessary for the defendants to show, to your satisfaction, that, at the time of the sale of the realty by the sheriff of Scott county, Waugh, the execution debtor, had an interest in the land so sold; and if you believe from the evidence that at the time of said sale Waugh had no interest in said realty, then the sheriff's deed conveyed no interest, and you should find for the plaintiff.

4. The jury is instructed that the statutes and common law of this State declare that "no person shall enter upon or into any lands, tenements or other possessions and detain and hold the same, but when entry is given by law, and then only in a peaceable manner;" and if you believe from the evidence that the defendants did enter upon the possession of plaintiffs and detain from plaintiffs the possession of said realty, and if you further believe from the evidence that such entry was not given by law, or that such entry was not effected in a peaceable manner, then you should find for the plaintiffs.

5. If you find for the plaintiffs, you will assess the damages from the evidence that plaintiffs may have sustained for all waste and injury done by defendants and the rents and profits from the time defendants took such possession to the present time; and if you find for the plaintiffs you will further find the monthly value of such rents and profits.

The following instructions were given for the defendants: 1. The court instructs the jury that if they are satisfied from the evidence that the land in controversy was patented to Alexander Waugh, Sr., in 1864, by the county of Scott, and that the deed from Waugh to Vollmers is a mere quit-claim deed made in 1859, then the title acquired by Waugh in 1864 will not inure to Vollmers and those claiming under him.

2. The court instructs you further, that if you are satisfied from the evidence that the interest of Waugh, acquired by patent from Scott county, was, by a sale of the sheriff of Scott county, conveyed to Claude Benna, and that defendants are his heirs, then you should find for the defendants, unless the plaintiffs have established a title superior to the title of defendants.

3. The court further instructs you that, although you may believe from the evidence that Vollmers recovered a judgment for the premises in controversy, yet the mere fact that such judgment was recovered would not author-

ize Vollmers, or the sheriff, to eject Benna without a proper writ of restitution issued by the circuit clerk of Mississippi county, and that, if you are satisfied that the said Voll-mers acquired the possession of the said premises by force and without such a writ having issued, the possession so acquired was wrongful.

5. The court further instructs you, that if the premises in controversy, prior to the year 1865, were a portion of the county of Cape Girardeau, and the said premises were swamp land granted by the State to the counties in which situate, the county of Scott could not legally sell, convey or patent the same while a part of the county of Cape Girardeau.

6. The court further instructs you, that the former action of ejectment instituted by Vollmers, is no bar to the right of the defendants to make any and all defenses they may have as against plaintiffs, Kimmel, in this case, unless you still further believe from the evidence that the defense in this case is in all respects and precisely the same as the defense made in the case of *Vollmers*.

7 The court further instructs you, that the middle of the main channel of the swamp was the boundary between Cape Girardeau and Scott counties prior to 1865, and that if you believe from the evidence that the said described real estate was situated north of the main channel of the Big Swamp, then you are authorized to find that the said real estate was situated in the county of Cape Girardeau until the 9th day of February, 1865, when the boundary line was changed.

8. The court further instructs you, that if you believe from the evidence that the county of Scott, prior to 1865, sold by patent the premises in controversy, and that the county of Cape Girardeau did not sell said land while situate in said county; and further, that no one acquired any superior right and title to said real estate while situate in the county of Cape Girardeau, that the title acquired by Scott county by virtue of such change of boundary will

inure to the prior patentee of Scott county, and those claiming under him. And further instructs you, that if you believe from the evidence that Claude Benna, under whom the defendants claim from 1854, was in the open, notorious, hostile, adverse and continuous possession of the said described real estate, claiming the same and making improvements thereon by cutting timber and clearing about seventy acres of land, and that Claude Benna had and held such possession for ten years next after 1854, and up to the period he was forcibly dispossessed, you should find for the defendants.

There was a verdict and judgment for the defendants.

The principal question discussed by the appellants is, whether one judgment in ejectment is a bar to another 1. EJECTMENT: action for the same property between the judgment: estop-pel. same parties. The question may be considered as not necessary to be decided in this case, since the court instructed the jury "that the former action of eject-ment instituted by Vollmers is no bar to the rights of defendants to make any and all defenses they may have as against plaintiffs in this case, unless you still further believe from the evidence that the defense, in this case, is in all respects and precisely the same as the defense made in the case of *Vollmers.*" The defense was not precisely the same, since the defendants introduced the deed of the sheriff of Scott county to Benna, which was concededly not intro-duced on the trial of the ejectment case of *Vollmers v. Benna;* but it may be well enough to determine the general proposition, the qualifications of which, in the instructions, are conveyed in such very definite and distinct terms. The instruction, as given, seems to have been suggested by a remark of the learned judge who delivered the opinion of the court in *Foster v. Evans,* 51 Mo. 39, "that a judg-ment in ejectment is not a bar to another suit or to de-fenses set up in a subsequent suit, unless the titles and defenses are precisely the same as they were in the first suit."

At the common law, which was adopted in this territory in 1816, it is hardly necessary to say that a judgment in ejectment was not a finality, whether the titles or defenses were the same or not. Adams on Eject., p. 420. As was observed by the Supreme Court of New York in 1808 in the case of *Jackson v. Dieffendorf*, 3 Johns. 270 : "The amount of a recovery in ejectment is accurately and forcibly stated by Lord Mansfield in the case of *Atkyns v. Hord*, 1 Burr. 114. It is a recovery of the possession, not of the *seizin* or freehold, without prejudice to the right, as it may afterwards appear, even between the same parties. He who enters under it, in truth and substance, can only be possessed according to right. If he has a freehold, he is in as a freeholder. If he has a chattel interest, he is in as a termor. If he has no title, he is in as a trespasser. If he has no right to the possession, then he takes only a naked possession. This is the obvious and established construction of the nature and effect of a judgment in the action of ejectment." In *Botts v. Shields*, 3 Littell 36, the court of appeals of Kentucky declared "that the doctrine is well settled that neither a verdict nor judgment in an ejectment concludes the parties from questioning the title in any subsequent contest about the same title."

But it is unnecessary to multiply authorities on this subject, as the position is not disputed; but it is urged that since the act of 1807, (Terr. Laws, ch. 38,) abolishing lease, entry and ouster, the reason for the rule no longer exists, and the rule should, therefore, be abandoned. The act of 1807 is as follows : "In all actions of ejectment the plaintiff shall declare in his proper name and instead of the fictitious suggestion of lease, entry and ouster, shall state that he is legally entitled to the premises, and aver the ejectment and trespass of the defendant, and the defendant, in his defense, plead not guilty, or plead his title according to truth; the parties having the same right of pleading, joining issue and demurring as in other cases," &c. In the revision of 1825, (see title ejectment,) this

provision of the law of 1807 was re-enacted in terms with this addition, that "it shall be sufficient for the plaintiff, on the trial, to show that he is and was, at the time of the commencement of the suit, entitled to the possession of the premises, and that the defendant was in possession thereof at the commencement of the suit." In the revision of 1835 no change was made in regard to the form or effect of this action, and in section 9 is repeated substantially what was in the former revision, to-wit: "To entitle the plaintiff to recover, it shall be sufficient for him to show that at the time of the commencement of the action the defendant was in possession of the premises claimed, and that the plaintiff had such right to the possession thereof as is declared by this act to be sufficient to maintain the action." This refers to entries at the United States land offices, pre-emption rights, New Madrid locations, &c. In the revision of 1845 the same provision in regard to the force of the action is retained.

In the revision of 1855 the act concerning ejectment was copied from former revisions, with the exception of a single section, which was introduced as a new provision, and was obviously designed or supposed to change the law as it stood before in regard to the bar of a judgment. Section 33 provided that "a judgment, except of non-suit, in an action authorized by this act (ejectment) shall be a bar to any other action between the same parties, or those claiming under them, as to the same subject matter." Just two years afterwards, at the next session of the Legislature, this section 33 was repealed. See Sess. Acts 1857, p. 34. And so the statute law of this State has stood up to the present day.

Now let us see what construction has been given to this legislation by the courts of this State. The first case in which the question comes up directly, and is decided clearly, is in 1862, in the case of *Slevin v. Brown*, 32 Mo. 176. The circuit court, in that case, had given the following instruction: "If the plaintiff, in this case, claims

under Anthony Tiernan, and if the action brought by the defendant, John Brown, against Anthony Tiernan and others, the record of which is in evidence in this case, was brought for the recovery of the premises in question in this suit, and if the said Anthony Tiernan, or those claiming under him, set up as a defense in that action the identical claim of title on which the plaintiff now seeks to recover, then the judgment in that case, in favor of Brown, is a bar to this action." The court says in reference to this instruction: "This act for the recovery of the possession of lands, of 1855, (1 R. C. 1855, p. 695,) in section 33, provides that a judgment, except of non-suit, in an action authorized by this act, shall be a bar to any other action between the same parties, or those claiming by or under them, as to the same subject matter. An act amendatory of that act, approved November 21st, 1857, (Laws of Adjourned Session 1857,) repealed the 33rd section of the original act. We conceive this to be equivalent to declaring that such judgment is not a bar to another action." The second case in which the subject is noticed is in 1866, in *Carter v. Scaggs*, 38 Mo. 304. In that case Judge Holmes merely remarks " one action of ejectment is no bar to another upon the same cause of action." In *Holmes v. The City of Carondelet*, 38 Mo. 552, Judge Wagner observes: " By the common law, contrary to the rules which govern in other actions, an action of ejectment may be brought repeatedly for the same thing, and the previous judgment will not constitute an estoppel. By the revised code of 1855, it was provided that a judgment in ejectment should be a bar to any other action between the same parties, or those claiming under them, as to the same subject matter, except in case of judgment by non-suit. An adjudication was made on this statute in the case of *Miles v. Caldwell*, 2 Wall. (U. S.) 35, and its propriety was strongly vindicated and extolled as being peculiarly proper and appropriate in this country, where ejectment is often used to try the title of real estate. But in 1857 this statutory provis-

ion making judgments in ejectment a bar, was repealed by the Legislature, and the law restored as it previously existed." *Slevin v. Brown*, 32 Mo. 176. The same position is reiterated in *Gibson v. Chouteau*, 50 Mo. 86, and this last case was decided in the same year, 1872, where the remarks occurred which we have quoted from the case of *Foster v. Evans.*

Thus it will be seen that from 1807 up to the present time, a period of over seventy years, the statute law concerning this action of ejectment, both before and after the practice act of 1849, with the exception of an interval of two years from 1855 to 1857, has remained substantially the same, and that the construction given to these acts by the courts has been equally uniform in regard to the effect of abolishing fictitious parties in 1807. That no case occurs in our reports previous to 1862, merely tends to show that in the opinion of the profession the common law rule concerning judgments in ejectment was the law of this State, except when a different one was enacted in 1855, and the repeal of that enactment shows clearly that after an experience of two years the common law rule was preferred. The opinion of this court also in *Patterson and wife v. McCamant*, 28 Mo. 210, though not touching at all upon the question, is evidently based on the assumption that the common law rule prevailed at that date, for it is manifest that no particular importance could be attached to the nature and efficacy of bills of peace if a single ejectment settled the title. It is a mistaken assumption that the sole reason for the ancient rule in regard to the want of finality of judgments in ejectment was the employment of fictitious parties in the proceeding. A judgment in ejectment confers no title upon the party in whose favor it is given. " It is, therefore, manifest," observes Mr. Adams in his treatise on ejectment, " that the judgment can never be final, and that it is always in the power of the party failing, whether claimant or defendant, to bring a new action." This reason is just as applicable

since the abolishment of lease, entry and ouster as before. And thus Chief Justice Hosmer, in *Smith v. Sherwood*, 4 Conn. 276, held that a former judgment for the defendant in an action of *deseizin* (ejectment) on the issue of no wrong or *deseizin* was no estoppel of the plaintiff's title, as such judgment might have been rendered on the ground that the defendant had not been in possession, or had possessed by license from the plaintiff, or on some other ground not involving the question of title.

It is true that since the courts have allowed parol testimony to establish the matters actually litigated in a case, without regard to the issues made by the pleadings, a change from the old law might seem more plausible and reasonable than when the courts held that to create an estoppel the precise point of the judgment must be made to appear from the record alone. And we do not undertake to say that such an innovation might not be wise and beneficial, although the experiment in 1855 did not prove an acceptable one.

What is said by Lord Ellenborough in *Outram v. Morewood*, 3 East 358 and 5 T. R. 121, that a recovery in one action was a bar to another, and that this applied not to personal actions alone, but to all actions whatsoever, *quoad* their subject matter, is confessedly the law, but only shows that to make a judgment in ejectment conclusive of a title which has been investigated and decided, the nature of the action must be essentially changed. There is no inconsistency or contradiction between the decision of Lord Ellenborough in *Outram v. Morewood* and that of Lord Mansfield in the case of *Atkyns v. Hord*. No objection can be made to the rule laid down by Mr. Justice Miller in *Miles v. Caldwell*, based as it was on the 33rd section of the act of 1855, concerning ejectments, and upon the doctrine that the State courts shall be permitted to settle for themselves all questions affecting the title to real estate, and that the Federal courts would follow such rules. It is not necessary to a concurrence in this opinion that we should

assent to the remarks of the learned judge in relation to the popular feeling in the Western States concerning transfer of land, as contradistinguished from that in England and in the Eastern or older States. The action of our Legislature in Missouri on this very subject relied on by Judge Miller as justifying the remark leads us to doubt whether this State is willing to abandon the safe-guards of the common law, and place traffic in land on the same footing with that in horses and merchandise. In regard to the decision in *Sturdy v. Jackaway*, 4 Wall. 174, that in the statutes of Arkansas and their judicial decisions no difference is recognized between the conclusiveness of a judgment in real or personal actions, we have nothing to say. We do not profess to be familiar with the statutes or decisions of that State; that it has been otherwise here has already been demonstrated by references both to the statutes and decisions.

We dismiss this point with extracting some remarks of Judge Roane of the court of appeals of Virginia in 1819, which seem to be pertinent. " The case before us being an ejectment, (and the fourth ejectment between the same parties,) no verdict and judgment which may have taken place in the former actions can be relied on as a bar in this. If, however, any decision has been given, and particularly by the court in the last resort, in a former case, it is to be respected as an authority. It is to be so respected if it even occurred between other parties. *

* This consequence grows out of our system of jurisprudence, which is based and bottomed upon decisions and precedents. While this system, thus understood, affords a check to the arbitrary discretion of the judges, it also sets up a standard by which our citizens may govern themselves in the formation of their contracts. The solemn decisions of our courts, therefore, especially of the court in the last resort, ought not to be lightly departed from. In the case of recent decisions, however, if they be erroneous, they ought to be corrected. They ought to be

corrected because they are erroneous, and because, being recent, they have probably not spread their influence extensively into the transactions of other citizens." In accordance with these views, we think if changes in the law of ejectment are deemed expedient, it is the province of the legislative department of the State to make them, and that the judicial interpretation of our present law, which has prevailed for so long a time must remain the same until legislative intervention. As the only error in the instruction given by the court on this subject was one which operated against the defendant, and the verdict was for the defendant notwithstanding, the error is certainly no ground for reversal.

It is conceded that Waugh's deed to Vollmers, in 1859, did not convey the title acquired by Waugh from Scott county in 1864. This point was expressly decided by this court in 1850, in the case of *Bogy v. Shoab*, 13 Mo. 365, and reiterated in *Valle v. Clemens*, 18 Mo. 486. But it is insisted that the conveyance of Scott county to Waugh, in 1864, furnishes a reasonable presumption that prior thereto Waugh had an equitable inchoate right, and that this equitable or inchoate right passed to Vollmers by the deed of 1859. This presumption would be, in this case, directly in contradiction to the fact proved on the trial, since it was clearly established, without any contradictory evidence, that the Bennas, in 1859, were in the actual possession of this land, and had been since 1854, and had been applying to the county court of Cape Girardeau county for a preemption from 1854, and continued in possession until they were removed by the sheriff in 1870. In 1864, when Scott county patented this land to Waugh, the evidence in this case clearly showed that the land was not in Scott county, but wholly north of the main channel of the swamp, which, at that time, was the line between Scott and Cape Girardeau counties. In 1865 a new division line between the counties was made by the Legislature, which threw the land

*Margin note:* 2. QUIT-CLAIM DEED: after acquired title: presumptions.

in Scott county. After this the deed from the sheriff to Benna undoubtedly conveyed all the title which Waugh had. Whether he had any to be conveyed, it is unnecessary to decide, since the plaintiffs, who claimed under Vollmers, had no title whatever.

The questions of fact in regard to the manner in which the Bennas obtained possession of this land, after being ejected by the sheriff under the judgment of Vollmers, were submitted to the jury under instructions, to which no objections are made, and the verdict of the jury for the defendants must be regarded as conclusive on this point, as I do not observe any evidence preserved on the subject. In short, without any review of the instructions in detail, it is plain that the plaintiffs, in this case, rely altogether upon the plea of former recovery, and the case itself presents a very good illustration of the wisdom of adhering to the old common law doctrine on that subject. Judgment affirmed. Judges SHERWOOD, HENRY and NORTON concur. Judge HOUGH dissents.

3. VERDICT.