JOHN A. DUNN, Respondent, *v.* GEORGE C. MILLER ET AL., Apppellants.

8a 467
96 332

### March 23, 1880.

1. Ejectment tries the possessory right only, not the title, and a judgment is not a bar, though the parties, titles, and defences are the same.

2. A certified copy of a deed, properly acknowledged, purporting to convey all

the rights acquired under a New Madrid certificate, afterwards located in the county where the deed was recorded, is properly admitted in evidence more than sixty years thereafter, in an action of ejectment for the land.

3. A certified copy from the general land-office of relinquishment of New Madrid land is competent as tending to show that the claimant then claimed in his own right.

4. Where the circumstances under which one holds, and has a long time held, possession of land are such as could not well occur without a grant, a deed will be presumed from him in whom the title was, and whose legal representatives have made no claim for more than sixty years.

5. A former recovery in ejectment does not terminate the presumption arising from a prior possession, such possession not being merely naked, and there being no acquiescence in the possession acquired by the former recovery.

6. A sheriff's deed, made under the act of 1825, which recited the execution, advertisement, purchase, and consideration, is not void for omitting to recite where the sale was made, and that it was made in term-time.

7. In a collateral proceeding, it is immaterial that a judgment only incidentally in question was irregular.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

D. T. JEWETT, for the appellants : The recovery in the former ejectment-suit settled, as between the parties, the right of possession and its consequences, and Dunn cannot recover in this action on any presumption of title arising from the fact of possession prior to the former judgment. — *Whitney* v. *Wright*, 15 Wend. 179 ; *Jackson* v. *Rightmyre*, 16 Johns. 325 ; 2 Chitty's Bla. Comm., bk. 3, top p. 147 ; *Arnold* v. *Arnold*, 17 Pick. 4 ; *Jackson* v. *Tuttle*, 9 Cow. 234 ; *Jackson* v. *Walker*, 7 Cow. 642 ; *Beebe* v. *Elliott*, 4 Barb. 457 ; *Marshall* v. *Shafter*, 32 Cal. 196 ; *Foster* v. *Evans*, 51 Mo. 39 ; *Clarkson* v. *Stanfield*, 57 Mo. 573 ; *Sturdy* v. *Jackman*, 4 Wall. 174 ; *Carpenter* v. *Schmidt*, 26 Cal. 179 ; *Stephens* v. *Hughes*, 41 Pa. St. 383 ; *Woodin* v. *Clemens*, 32 Iowa, 280 ; *Sherman* v. *Dilley*, 3 Nev. 22. A certified copy, from the land-office, of a relinquishment not recorded in New Madrid, where the land lay, is not admissible. — *Gwynn* v. *Frazier*, 33 Mo. 89 ; *Muldrow* v. *Robin-*

son, 58 Mo. 343; *Hot Springs Case*, 92 U. S. —; *Joeckel* v. *Easton*, 11 Mo. 126. The sheriff's deed was void, not containing the required recitals. — *Tanner* v. *Stine*, 18 Mo. 580; *Buchanan* v. *Tracy*, 45 Mo. 441, 442; *Bruck* v. *Leary*, 55 Mo. 434; *Merchants' Bank* v. *Evans*, 51 Mo. 345. No copy of a deed could be used in evidence before the statute of 1825. — *Aubuchon* v. *Murphy*, 22 Mo. 123. When the statute does not require an instrument to be recorded, a copy from the record is not admissible as evidence. — *Patterson* v. *Fagan*, 38 Mo. 83. If the possession of the land by the party who invokes the presumption is entirely consistent with the title in another, said possession will not authorize the presumption of a conveyance. — *Watson* v. *Bissell*, 27 Mo. 220. No "presumptions" can be made against the rights of a married woman; her hands are tied. — *Meegan* v. *Boyle*, 19 How. 149, 150.

HENRY M. BRYAN, for the respondent: A judgment cannot be collaterally attacked for irregularity. — *De Forrest* v. *Hunt*, 62 N. Y. 628. A judgment in ejectment is not a bar to another action. — *Holmes* v. *Carondelet*, 38 Mo. 551. Equity will not aid one who has negligently *slept* upon his rights, and induced others to act upon the belief that he had abandoned them. — *Landrum* v. *Bank*, 63 Mo. 48; *Stark* v. *Starr*, 94 U. S. 477; *Bowman* v. *Wathen*, 1 How. 189; *Smith* v. *Clay*, 2 Bro. C. C. 640. As to the defence of estoppel *in pais*, or equitable estoppel. — *Pickard* v. *Sears*, 6 Ad. & E. 469; *Gregg* v. *Wills*, 10 Ad. & E. 90; *Storrs* v. *Barker*, 6 Johns. Ch. 168; *Hall* v. *Fisher*, 9 Barb. 31; *Brewster* v. *Baker*, 16 Barb. 613; *The State* v. *Holloway*, 8 Blackf. 45; *Hartman* v. *Kendall*, 4 Ind. 403; *Collins* v. *Rogers*, 63 Mo. 515; *Vallé* v. *Fleming*, 29 Mo. 152; *Hughley* v. *Barron*, 49 Mo. 103; *Rice* v. *Bunce*, 49 Mo. 231; *Chouteau* v. *Goddin*, 39 Mo. 250. "Circumstances may justify the presumption of a grant, though the Statute of Limitations does not afford a bar." — *Ewing* v. *Burnet*, 11 Pet. 41; *Newman* v. *Studley*, 5 Mo. 295; *McNair* v.

*Hunt*, 5 Mo. 300 ; *Thompson* v. *Peak*, 7 Rich. 353 ; *Down-ing* v. *Miller*, 33 Barb. 386 ; *Jackson* v. *McCall*, 10 Johns. 380 ; *Jackson* v. *Pratt*, 10 Johns. 381 ; *Beall* v. *Lynn*, 6 Har. & J. 361.

W. H. CLOPTON, for the appellants : The circumstances are such as to raise the presumption of a grant from Sarah Lucas to Charles Lucas. — 1 Ph. on Ev. 672 ; 1 Greenl. on Ev., sect. 46, and cases ; *Newman* v. *Studley*, 5 Mo. 291 ; *Downing* v. *Miller*, 33 Barb. 386 ; *Mayor of Hull* v. *Horner*, Cowp. 102 ; *Hillary* v. *Waller*, 12 Ves. 239 ; *Jackson* v. *McCall*, 10 Johns. 380 ; *Jackson* v. *Pratt*, 10 Johns. 381 ; *Beall* v. *Lynn*, 6 Har. & J. 361 ; *McNair* v. *Hunt*, 5 Mo. 300. A deed may be presumed from a married woman. — *Melvin* v. *Proprietors*, 16 Pick. 137 ; 17 Pick. 255. Lucas, being the owner of the equity, could make a deed to it, though the land was not then surveyed. — *Haywood* v. *Ormsby*, 11 Wis. 3 ; *French* v. *Spencer*, 21 How. 228 ; 45 Mo. 584. The defendants cannot attack the proceedings in *Bank* v. *Langham* collaterally. — *Voorhis* v. *Bank*, 10 Pet. 449 ; *Grignon* v. *Astor*, 2 How. 319. A judicial sale, made pursuant to a decree or judgment of a competent court having jurisdiction, passes title to the purchaser, even though the judgment afterwards be reversed or set aside. for irregularity. — *Burns* v. *Burns*, 6 Vt. 388 ; *Holden* v. *Sackett*, 12 Abb. Pr. 473 ; *Gussen* v. *Donaldson*, 18 B. Mon. 230. A judgment in ejectment is not a bar. — *Carter* v. *Scaggs*, 38 Mo. 302 ; *Holmes* v. *Carondelet*, 38 Mo. 551 ; *Stevens* v. *Brown*, 32 Mo. 176 ; *Strother* v. *Lucas*, 12 Pet. 410.

BAKEWELL, J., delivered the opinion of the court.

This is an action of ejectment, to recover a tract of land included in United States survey 2541, made under New Madrid certificate 164, in the name of John Brooks. The parcel of land claimed in this action is a tract fronting two hundred and ninety feet on Grand Avenue in St. Louis,

and lying in Page and McPherson's Addition. The particular lots involved are the same which defendants recovered of Dunn and his tenant Solari, in *Miller* v. *Dunn*, reported in 62 Mo. 216. The petition is in the usual form. Defendants plead not guilty.

Both parties claim under Charles Lucas. Lucas conveyed to Tanner, under whom plaintiffs claim. In the ejectment of *Miller* v. *Dunn*, Miller claimed under Mrs. Lucas, to whom, under the name of Sarah Graham, Lucas had conveyed the property in contemplation of marriage. Miller, in that suit, introduced a deed from Mrs. Lucas to Gillespie, and derived title to himself through Gillespie. Though Dunn had been in possession for more than twenty years before that action, claiming under Charles Lucas, yet the statute was no bar, as the legal title had not passed out of the United States until the act of Congress of 1864, and the suit was begun in 1872. In the present action, the deed of Mrs. Lucas to Gillespie was not introduced. Defendant showed a legal title in Mrs. Lucas, merely as an outstanding title in a stranger, to show a break in the chain of plaintiff's title at that point. The theory of plaintiff in the present case is that, in the absence of evidence to the contrary, a deed from Mrs. Lucas must now be presumed, to bridge over the gap in the paper title. Defendant introduced the record of the former recovery, and claims that it is a termination of the presumptions in plaintiff's favor growing out of long possession. He also claims that it is a bar.

This is sufficient as an introductory statement. The points upon which defendant relies will be understood from what is further said in the course of the opinion.

It is contended by defendant that the former recovery is a bar. In view of the recent decision of the Supreme Court in *Kimmel* v. *Benna*, 70 Mo. 52, it must be taken as settled that a judgment in ejectment is no bar in Missouri, even though the titles and defences are precisely the same as they

were in the first suit. Ejectment tries the strength of legal right of possession, and title is only incidentally drawn in question. This was the rule in Missouri until changed by statute in 1855. Rev. Stats. 1855, p. 695, sect. 33. And the old rule was restored by the act of 1857. Acts, p. 34. There could have been no doubt on the matter — in view of the rulings in *Slevin* v. *Brown*, 32 Mo. 176; *Carter* v. *Scaggs*, 38 Mo. 302; and *Holmes* v. *Carondelet*, 38 Mo. 551 — but for the *dictum* in *Foster* v. *Evans*, 51 Mo. 39. The matter is now, however, settled, even if there was ever room for a serious question as to the doctrine of the Supreme Court in the matter. There has, really, never been any contrary ruling in this State.

It is, however, incumbent on plaintiff, in this action, to show such title in himself as will warrant a recovery in eject-ment. He claims that he has done so.

In 1801, seven hundred and nine arpens of land in New Madrid County were confirmed to the legal representatives of John Brooks. Brooks conveyed to Charles Lucas. Lucas applied for relief under the New Madrid Act, claim-ing the fee of the land, and that it was injured by earth-quake; and in November, 1816, he received from the recorder of land-titles New Madrid certificate 164, entitling him to locate the like quantity (seven hundred and nine ar-pens) of land. The first deed offered in evidence by plain-tiff is a certified copy of a deed recorded in St. Louis County. This deed is dated January 1, 1817, and purports to convey to James Tanner, his heirs and assigns, " a certain tract or parcel of land of seven hundred and nine arpens, and the original certificate, of which the following is a copy." Then follows the New Madrid certificate to the legal representa-tives of John Brooks, entitling him to locate seven hundred and nine arpens in the Territory of Missouri. Then follows the *habendum* clause, to James Tanner and his heirs, etc., " whom I do hereby authorize to locate, or cause to be located, according to law, the said quantity of seven hundred

and nine arpens of land; hereby covenanting to and with said Tanner that I am the lawful owner of the land, and whenever said land is duly located, will make a deed of warranty.'' This instrument is acknowledged and recorded on January 4, 1817. The certified copy was admitted, against defendants' objection.

The Territorial law of 1804, in force at the time, provides that '' all conveyances made and executed within the district, of or concerning lands, or whereby the same may be affected, shall be acknowledged   *   *   *   and recorded in the recorder's office in the district where the lands and hereditaments are lying or being.'' 1 Ter. Laws, 46, sect. 8. This New Madrid certificate might never be located. It might have been returned, and the New Madrid lands kept. It might have been located anywhere in Missouri, or in Arkansas, which was then within the Missouri Territory. It was, however, afterwards located in St. Louis County; and it is manifestly an instrument by which land may be affected. It is, therefore, an instrument which may be acknowledged, and an instrument which may be recorded. The case is not like that of a certified copy of the record of Spanish concession in *Patterson* v. *Fagan*, 38 Mo. 83. That is a paper from the Spanish government, not acknowledged under the acts concerning conveyances, and which gave no right, except to a permissive possession under the former government. The evidence of cultivation and possession, and not the fact of a Spanish concession, was what gave rights under the act of 1812. A power of attorney must be recorded in the county in which the land sold under it is situated; at the time that it is recorded, however, it may not be an instrument affecting land in that county. It may never affect land in that county. Judge Napton, in considering sect. 24 of the act concerning conveyances (Wag. Stats. 277, sect. 24), in *Muldrow* v. *Robinson*, 58 Mo. 345, construes the words, '' by which any real estate

may be affected," to mean that the deed is to be recorded in the county where the land "supposed or sought to be affected is situated." A paper which affects land is to be recorded in the county where the land lies. This paper affects the land in controversy here, and is recorded in the county in which that land lies. It is, therefore, within the provisions of sect. 40 of the act concerning evidence, that " whenever the records in the recorder's office of deeds of any county shall contain a record of any writing, instrument, or deed purporting to affect any real estate, right, or interest in or to the same, and such real estate, right, or interest in or to the same shall have been claimed or enjoyed by any person, by or through such writing, for a period of ten consecutive years, such writing and a certified copy thereof, and of the time of its record, shall be *prima facie* evidence of the execution of such writing, and of its genuineness and time of record ; *provided*, the said record shall have been made at least ten years next before such writing, or certified copy thereof, is offered in evidence." Wag. Stats. 596, sect. 40 ; Acts 1873, p. 44. The certified copy offered in evidence seems to have been a copy of a deed affecting the land in controversy, and recorded where the land lay at the time of the record.

Plaintiff put in evidence an application by McKnight and Brady, dated January 25, 1817, prior to the record of the conveyance by Lucas to Tanner, to have the certificate located on lands described in the application. The description, according to the testimony of Surveyor Cozzens, would cover the land surveyed, and as much again.

Against the objection of defendant, plaintiff put in evidence a certified copy from the land-office at Washington of a relinquishment by Charles Lucas, to the United States, of the New Madrid land, dated November 5, 1816. As a copy of a deed, this was perhaps not competent. It was not a copy from the records of the county where the land lay. Neither was a formal relinquishment necessary ; nor did

Lucas acquire title by such relinquishment, the exchange of land being effected by operation of law when the survey is returned to the recorder of land-titles. But this paper was put in, probably, to strengthen the presumption of a deed from Sarah Lucas, or Sarah Graham, to Charles Lucas, and because of the recital contained in it that the land was at that date owned by Charles Lucas, " as appears by the chain of title herewith exhibited." It tended to show that Charles Lucas claimed under the New Madrid Act in his own right, and not as the agent of Sarah Lucas. Though the land injured by earthquake passed to the United States at the time that the right to a title passed to the claimant to the land located in lieu thereof, and this happened, when a right to a patent was acquired, on the return of the plat of the survey to the recorder of land-titles, and though no act of relinquishment was requisite under the law, yet we know that such acts, in the shape of deeds, were commonly made, and, when made, it seems proper that they should have been preserved by the government. Nothing else would be likely to be preserved to show who was the actual claimant of a patent. The paper was an exemplification of the original by the commissioner-general of the land-office, its proper custodian, and we do not see why it should have been excluded. It recites that Charles Lucas is about to take the benefit of the New Madrid Act.

Plaintiff put in evidence a certified copy of a deed from Tanner to McKnight and Brady, dated January 13, 1817, recorded the following November in St. Louis County. It was also shown that McKnight and Brady entered the land in controversy as the legal representatives of John Brooks, under New Madrid certificate 164. The entry and notice of location was duly filed with the surveyor-general of the Territory, and the land was surveyed for the legal representatives of John Brooks, by the deputy-surveyor, in March, 1818. Cozzens testifies that the survey covered the

land in question.   McKnight and Brady conveyed to Langham by a deed in evidence.

The title of Langham is shown to have been acquired by Brown Cozzens, who sold to Abbott in 1834.   From Abbott, the title is regularly derived by mesne conveyances to Gay, who acquired in 1840, and who, the next year, fenced the land acquired.   Page acquired from Gay, through McPherson, by deeds in evidence, and sold the lots in question, being part of the larger tract acquired by him, to John Dunn, in 1852.   John Dunn was the father of plaintiff, who acquired under his will.   Dunn, the father, took possession at once, and at once fenced and put up valuable improvements.   Valuable additional improvements have been put up by the son. And father and son were successively and continuously in possession until dispossessed by defendant in 1876.   Thus, from 1840 to 1876 there was actual possession of these particular lots under Charles Lucas; and from 1808 to 1872 nothing is heard of Sarah Lucas, formerly Sarah Graham, in connection with the land.   She made no claim under the New Madrid Act or otherwise.   The only reasonable explanation of this state of facts is that she had no claim to make; and a reconveyance from her to Charles Lucas before marriage, or a conveyance to Charles Lucas by some person to whom the land was conveyed by her, may be supposed.   We think that the trial court was warranted in presuming such a grant.   The deed from Sarah Lucas to Gillespie, dated in 1821, was not offered in evidence in the present case.   From the proceedings on the former trial in ejectment, put in by defendant, we see the date of the deed from Sarah Lucas to Gillespie, and that it was introduced there.

We do not regard the former recovery in ejectment as a termination of the presumptions arising from a prior possession.   There was no acquiescence in the possession acquired by a former recovery; and the prior possession was not a mere naked possession, as in *Nelson* v. *Brodhack*, 44 Mo.

596. " The presumption, in courts of law, from length of time stands upon a clear principle, built upon reason, the nature and character of man, and the result of human experience that a man will naturally enjoy what belongs to him." Lord Erskine, in *Hillary* v. *Waller*, 12 Ves. 239. The presumption does not arise when all circumstances are perfectly consistent with the non-existence of the grant; but where the facts are such as could not, in the usual course of affairs, occur unless there had been a grant, almost every variety of written evidence will be presumed in favor of long possession. Enjoyment under a title which can only be record, is strong evidence to be left to a jury that it did once exist. *Mayor* v. *Horner*, Cowp. 102 ; *Brinley* v. *Forsythe*, 69 Mo. 176. The conveyance to Sarah Graham was dated December 4, 1808, in consideration of a marriage recited in the deed as shortly to take place. The date of the subsequent marriage is not fixed by any evidence in this case. It is shown that Charles Lucas and Sarah Graham were subsequently recognized as man and wife. Whether this was before 1815 does not appear.

It is contended by appellant that, as the deed from Langham by the sheriff to Brown Cozzens does not recite that the sale was made in term-time of the Circuit Court, and does not recite where the sale was made, the deed is absolutely void. The act of 1835 (Rev. Stats. 1835, p. 259, sect. 45) required that the sheriff's deed should recite the names of parties, date, date of judgment, particulars recited in the execution, description of the property, and time, place, and manner of sale. But the sale in question here was made in 1833, and, therefore, apparently under the act of 1825. Rev. Stats. 1825, p. 369, sect. 20. The act of 1825 requires the deed of the sheriff to recite the execution, advertisement, purchase, and consideration. This deed contains these recitals. The statute of 1825 not requiring a recital of the time, place, and manner of sale, the decision

in *Tanner* v. *Stine*, 18 Mo. 580, is not in point. As to the proceedings in *Bank of Missouri* v. *Langham*, whether they might have been successfully attacked in a direct proceeding for that purpose, we need not inquire. Langham was personally served, and he acquiesced for half a century. It is perfectly immaterial, for the purposes of this case, whether the proceedings were regular. If the judgments were erroneous, the Circuit Court had jurisdiction of the parties and of the subject-matter, and the title of plaintiff is not to be affected by these alleged irregularities. We think the judgment good against a collateral attack.

The objection that the land conveyed by some of the deeds in plaintiff's chain of title is described as being in the Coontz tract, whereas it is in the Brooks tract, is of no force. The trier of the fact found that the land described in these deeds is, in fact, in the Brooks survey. The land is described in these deeds by metes and bounds, and the testimony of Surveyor Cozzens places the land in these deeds and the lots in controversy within these bounds. There is, we think, no room for doubt as to the identity of property in these deeds and the land intended to be conveyed.

It is not necessary to set out or to comment upon the instructions given and refused. The cause was tried by the court, a jury being waived; and we are clear that the finding was for the right party, and that it should not be disturbed.

The judgment is affirmed. Judge Lewis is absent; Judge Hayden concurs.