Avery v. Fitzgerald.

AVERY v. FITZGERALD *et al.*, *Appellants.*

1. **Practice** : EXAMINATION OF WITNESS : INTRODUCTORY TESTIMONY. It is proper that the jury, before hearing the evidence of a witness, should know who he is, where he is from, and such other matters personal to him as will enable them to appreciate his character and form a just estimate of the value of his testimony, and the introductory statement of a witness, that " he lived in Mississippi before the war and was a slave," constitutes no error.

2. ——— : EJECTMENT : EVIDENCE : HARMLESS ERROR. In an action of ejectment, where the issue is the execution or non-execution of a deed of trust under which defendant claims title, the admission in evidence of tax receipts, showing that plaintiff had paid the taxes on the land in controversy is harmless error, as it could not have influenced the verdict.

3. ——— : ———. A judgment in ejectment is no bar to a second action for the same property between the same parties, whether the titles and defences in both actions be the same or not.

4. **Practice in Supreme Court :** WEIGHT OF EVIDENCE. In law actions, the Supreme Court will not weigh the evidence, nor interfere with the verdict where there is any evidence to support it. But a verdict in such cases will not be allowed to stand where it is unsupported by any substantial evidence.

5. **Ejectment :** DEFENCES : EVIDENCE. In an action of ejectment, where the only issue submitted to the jury is whether plaintiff did or did not execute the deed of trust read in evidence, and under which defendant claims as purchaser, the deed being duly certified by a notary, and the plaintiff failed and refused, when the deed was shown him, to deny in his testimony that he executed it, but alleged that it was procured by fraudulent representations, of which defendant had no notice, a verdict for plaintiff should be set aside, there being no evidence to support it.

*Appeal from St. Louis City Circuit Court.* — HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Walker & Walker* for appellants.

(1) The tax receipts offered in evidence on the part of plaintiff were improperly admitted by the trial court,

as was also the evidence concerning plaintiff's condition of servitude. *Hinman v. Hare*, 6 Cent. Rep. 48. (2) The record of the former judgment in ejectment where the same title was in controversy should have been admitted as evidence on the part of defendants and was improperly excluded by the trial court. *Foster v. Evans*, 51 Mo. 39; *Miles v. Caldwell*, 2 Wall. (U. S.) 35. (3) The remedy of plaintiff, if a fraud was perpetrated to induce him to execute the deed of trust through which defendants derived title, was in equity, and such fraud could not be inquired into in an action in ejectment. *Yale v. Stevenson*, 58 Mich. 537.

*Leander J. Smith* for respondent.

This court will not look into the weight of the evidence where there is substantial evidence to support the verdict. *Arlington v. Ins. Co.*, 58 Mo. 421; *Peacock v. Nelson*, 50 Mo. 256; *Turner v. Gibbs*, 50 Mo. 556; *Oakes v. Ins. Co.*, 52 Mo. 237.

BRACE, J.—This is an action of ejectment to recover possession of lots 4 and 5, in James C. Edwards' addition to Prairie Place, in the city of St. Louis; the answer was a general denial.

Plaintiff, to show title in himself, introduced a deed from James C. Edwards and wife, dated October 23, 1866, to him, and defendants admitted that said deed vested in plaintiff, at the time of its execution, a good and legal title to the premises, and claimed to have acquired that title through a deed of trust executed by plaintiff, dated June 10, 1878, whereby plaintiff conveyed said premises to one Joseph Truitt, trustee, to secure the payment of a note of even date therewith, payable to the order of W. W. Watson, for one hundred and fifty dollars, one year after date. In accordance with the provisions of this deed of trust, the premises were sold by the trustee, and one Burchard Voigt became the pur-

chaser thereof, received a deed therefor, dated July 28, 1879, and said Voigt, by his warranty deed dated June 30, 1883, conveyed the premises to this defendant, Patrick Fitzgerald, who, it was admitted, was in possession by his tenant, Glenny, his codefendant herein. All the foregoing conveyances were admitted in evidence, and no question was raised on any of them except the deed of trust. The issue submitted to the jury on that deed appears by the following instructions given by the court:

"1. If the jury believe, from the evidence, that the plaintiff, Oliver Avery, did not sign by a mark, or authorize some one else to sign for him, or acknowledge the deed read in evidence, and purporting to be a deed from Oliver Avery, plaintiff, to Mills W. Watson's trustee, then the jury should find for the plaintiff, Oliver Avery."

"2. The jury are instructed that the only question for them to determine is, whether the plaintiff, Oliver Avery, did or did not execute the deed of trust offered in evidence, made by said plaintiff to Mills W. Watson's trustee, and if they are satisfied that the plaintiff did execute said deed of trust they will return a verdict for defendants."

No exceptions were taken to these instructions and they are recited simply to show the issue submitted to and tried by the jury. The jury found for the plaintiff, and defendants appeal, and urge for reversal that the court admitted improper evidence offered by the plaintiff, and refused to admit evidence offered by the defendants, and that the verdict is against the evidence. The evidence is preserved in the bill of exceptions in narrative form.

There is nothing in the objection to the introductory statement of the plaintiff, in his evidence, that "he lived in Mississippi before the war; was a slave." It is highly proper that the jury, before hearing the evidence of a witness, should know who he is, where he is from, and

such other matters personal to him as will enable them to appreciate the character of the witness they have before them, and to form a just estimate of the value of the testimony he is about to deliver.

The tax receipts offered in evidence and admitted by the court, showing payment by plaintiff of the taxes on the premises assessed for the years 1883 and 1884, had no bearing whatever on the issues and should have been rejected; but as it is impossible to conceive any effect their admission could have had on the verdict, the case ought not to be reversed for this error.

There was no error in the refusal of the court to admit in evidence the record of a former suit in ejectment, between defendants' grantor, Voigt, and the plaintiff, and the judgment rendered therein in favor of Voigt against plaintiff for the same premises, under the same chain of title as in this suit. That a judgment in ejectment is no bar to a second action for the same property, between the same parties, whether the titles and defences in both actions be the same or not, has been so long established in this state, as to have become a universally recognized rule in the tenure of real property, and will not be departed from by this court. *Foster v. Evans*, 51 Mo. 39; *Kimmel v. Benna*, 70 Mo. 52; *Ekey v. Inge*, 87 Mo. 493.

The only remaining point to be considered is, whether there is any evidence in the case to support the verdict, for if there is, the verdict must stand, it being the well-settled practice in this court, in law actions, not to weigh the evidence, nor interfere with a verdict if there is any evidence to support it. If there is any such evidence, it must be found in the testimony delivered by the plaintiff in his own behalf. In order to understand that evidence, however, it will be necessary to set out the evidence of the defendants bearing directly upon the only issue submitted to the jury, whether the plaintiff did or did not execute the deed of trust read

in evidence.    Three witnesses testified for the defend-
ants, and so much of their evidence as bears directly
upon the execution of the instrument is as follows:

Mills W. Watson testified: "I wrote out the deed
of trust, taking the description of the property from
Edwards' deed to Avery, and after writing the deed of
trust I carefully read it to him in the presence of George
W. Clark, and fully explained its meaning to him. At
the same time I made out a promissory negotiable note,
payable to my order one year from date, for one
hundred and fifty dollars, and interest at ten per cent.
per annum.   I also read the note and explained it to
him.    He said he understood what was done and was
satisfied.    John F. Wielandy, who was absent when I
wrote the deed and read it to the plaintiff, Avery, came
in soon after, and he being a notary public, I asked
him to take his acknowledgment of the deed.    Avery
being present, Mr. Wielandy took the note and deed of
trust, and read both to plaintiff, and explained to him
the meaning of both, and asked him if he wished to
sign the note, and acknowledge the deed of trust.
He said he did.    Mr. Wielandy, then, in the presence
of George W. Clark, myself, and Avery, wrote the
name, "Oliver Avery," on the deed of trust, at the
proper place, and asked him to make his mark with
the pen.    Avery did so, and acknowledged it to be
his signature, and that he executed the deed for the pur-
poses therein mentioned.  Mr. Wielandy also wrote
his (Avery's) name at his request, on the note, Avery
making his mark as he did on the deed of trust, and
requested George W. Clark to write his name as a
witness on the note and deed, which he did in the
presence of Mr. Wielandy and myself."    (Here witness
was asked to examine the deed of trust, and a nego-
tiable promissory note, and asked to state if he had
seen them before).    Witness answered:  "I recognize

both the note and deed, the body of both being in my handwriting. The words, 'Oliver x̱ Avery,' are on both note and deed in the handwriting of John F. Wielandy. The mark, or cross, was made by Oliver Avery, plaintiff in this case. The name, 'George W. Clark,' was written by George W. Clark, in my presence, and are the same note and deed I have testified about."

John F. Wielandy testified: "On the tenth of June, 1878, I was a notary public, duly commissioned and qualified, for the city of St. Louis." (Witness was here shown a deed of trust and promissory note, both dated June 10, 1878). "I have seen this deed and note before. On the day of that deed, June 10, 1878, Oliver Avery, that colored man there" (pointing to plaintiff, Avery), "came to the office, or rather I found him, Watson, and, I believe, Clark, in the office when I came in. I was asked, I do not remember now whether by Watson or Avery, to take his (Avery's) acknowledgment to a deed. I asked Avery if he knew the contents of the deed. He said he did. As the deed was not signed, I asked him to sign it; he said he could not read or write. I then, he being a colored man, and unable to read or write, took pains to read the deed over to him and explain its contents to him fully. After doing so, I asked him, before he made his mark as his signature to this deed, if he clearly understood the contents of it. He said he was satisfied and knew all about it, and requested me to write his name, which I did. The words, 'Oliver x̱ Avery,' were written by me before he made his mark to this deed of trust. After I wrote his name, he made his mark and acknowledged the same to be his act and deed for the purpose mentioned in the deed of trust.

I then attached my name and official seal thereto, as a notary public. At the same time I also wrote his name, at his request, on this note, and the words, 'his mark.' He made his mark on the deed and note before me, and was so particular about it that he requested George W. Clark, then in the office, to put his name to the note and deed as a witness of his signing the same by making his mark, which Clark did. I saw George W. Clark write his name on the note and deed as they now are, before I took Avery's acknowledgment of the deed of trust on the tenth of June, 1878. The note and deed were before me on my table when Clark wrote his name, as I have before stated. I know George W. Clark's handwriting and signature, and apart from seeing him write his name as a witness on the deed and note, I can positively swear to his signature. I do not know the present whereabouts of George W. Clark. I am satisfied he is not in St. Louis. Whether he is in the state or not I cannot say. About two years ago I saw letters from him dated Chicago, Illinois, and wrote to him at that point a year or more ago, but my letter was returned, as he could not be found."

James V. Majors testified as follows: "I am a carpenter and builder; do business in this city; knew plaintiff, Avery, in 1878, or in the early part of 1879. I remember Avery wanted to sell me some property he had in Elleardsville. I looked at the property and had some notion of buying. I asked him about the title. He said it was good, but that Mr. Watson, the lawyer, had a deed of trust on it."

The following is the whole of the evidence of the plaintiff on the issue: Plaintiff testified as follows: "I don't know my age; am 65 or 70; lived in Mississippi before the war; was a slave. After Vicksburg was taken, came to St. Louis, worked around doing jobs, bought my property from Mr. Edwards, built a house on

it; cost me three hundred and sixty dollars, the lots cost six hundred, and I paid for repairs afterward sixty dollars. It was worth six dollars a month for rent. Did not sell my property to any one. It is mine now. They just put me out by force. Know Mr. Watson, the lawyer. He lived near me. Had a talk with him several times; he said I ought to make a will. I asked what it would cost; he said five or six dollars; that he would draw one for me and I could pay him when I could. I got no will from Mr. Watson. I can't read or write. Never signed any deed of trust or any deed conveying this property." Cross-examined: "I have been a witness about my property several times. My memory is pretty good." (Here defendant's counsel presented a paper purporting to be a deed of trust executed June 10, 1878, by Oliver Avery, by his mark, to Joseph E. Truitt, trustee, conveying the property described in plaintiff's petition to said trustee, to secure the payment of a note of even date therewith, payable one year after date to the order of M. W. Watson, with interest at ten per cent., and on plaintiff being asked if he ever had seen the deed before, testified as follows:) " Can't tell; don't know anything about it. It is my property; don't know whether it was read to me or not. Don't know anything about a deed of trust. I know Mr. Wielandy. Watson did not show me a paper and tell me it was a deed of trust. They read me some paper. I signed it. Did not know it was a deed of trust. Don't know what it was I signed; didn't consult Watson about my wife's divorce case. I gave her a divorce if she paid for it. She got it. She was not a white woman; she was a bright mulatto. They took my property by force and put me out. They had a paper and said they were officers. Watson showed them my place; was not at the sale at the courthouse. Mr. Fitzgerald rented the house. He did not live in it. The house has been burned down. Don't remember

that I testified in a case of Avery against Voigt; don't remember anything about it. Do not know room number one in the courthouse. Do not know Judge Adams."

Reëxamined by counsel for plaintiff : "Did not employ Mr. Watson to attend to the divorce case for me. The paper that was read to me I thought was my will, that Mr. Watson agreed to make for me. I did not know anything about the deed of trust. They said it was a will. I thought it was a will. I could not read or write. Never owed Watson anything. Can only make a mark, but cannot write my name. They never read any paper to me. Never said anything about a deed of trust."

George Young, being called for plaintiff, testified as follows : "I have known the plaintiff several years. I knew lawyer Watson about four years ago. One Sunday morning I was at my well ; Avery came along. We spoke together and walked up the road. As we came to Mr. Watson's house he was standing on his porch. Mr. Avery said to Watson, 'I want to see you. What will you charge me to make a will?' Watson said, 'Not much; five or six dollars.' They had some talk and Avery went to Watson's house and I went home. That is all I know about the business."

Now, attaching no probative force whatever to the testimony for the defendants, but using it alone for the purpose for which it has been recited, to show what the plaintiff was talking about, when deposing, can there be found in the whole of plaintiff's testimony any evidence tending to prove that he did not in fact execute the deed of trust, and acknowledge the same as stated in the certificate of the notary? That certificate was *prima-facie* evidence of the truth of its recitals, and the plaintiff made no case unless he offered some proof tending to show, either that he did not sign, or did not acknowledge the instrument; there is not a word in the

evidence about the acknowledgment; as to whether he signed the deed of trust or not, he wouldn't say, "yea nor nay." When it was exhibited to him he would not say whether or not he had ever seen it, or it had ever been read to him; during the whole course of his examination he studiously avoided saying *he did not sign it.* He did, however, say that "they (Watson and Wielandy) read me some paper; I signed it; did not know it was a deed of trust; don't know what it was I signed; the paper that was read to me I thought was my will; I did not know anything about the deed of trust; they said it was a will; I thought it was a will."

The whole evidence tends to prove, not that he did not sign the deed of trust, but that he did not know, and would not say, whether he signed it or not; the substance of it was, that he signed a paper that was represented to him to be a will and he thought it was a will. The only legitimate inference that can be drawn from his testimony is, that he signed the deed of trust, but was induced to do so by the fraudulent representations of Watson and Wielandy that it was a will. This is all the evidence tended to prove, a proposition entirely outside of the issue submitted to the jury, which was simply, whether in point of fact he signed the deed of trust or not. To the affirmative of that issue the evidence lends no support. In order to avail himself, in his action of ejectment, of his right to have the deed of trust set aside for the fraud, which his evidence tended to prove, he would not only have to set up and prove the fraud, but, by either actual or constructive notice, bring that fraud home to the defendant, Fitzgerald. Of such notice there is not a particle of evidence, he stands upon the record as a purchaser for value without notice, and his property cannot be taken from him by the verdict of a jury unsupported by any substantial evidence. If the plaintiff has been wronged, he has his remedy, but not against this defendant, unless he participated

The State ex rel. v. Tracy.

in the wrong, or had notice of the fraud when he pur-chased.

The verdict of the jury must be set aside and a new trial awarded; that this may be done the judgment is reversed and the cause remanded. All concur, except Ray, J., absent.