# SPEED, Appellant, v. ST. LOUIS MERCHANTS BRIDGE TERMINAL RAILWAY COMPANY.

### Division Two, May 21, 1901.

1. **Ejectment:** JUDGMENT IN FEDERAL COURT: RES ADJUDICATA. A judgment for defendant in an ejectment tried in the Federal court is no bar to a subsequent ejectment between the same parties for the same property, whether the title and defenses be the same or not.

2. ———: MEANING OF DEED TO TRUSTEES. The deed conveyed the property to trustees to hold for the sole use and benefit of grantor's father during his life, to be controlled, rented and managed by the trustees, by and with the advice and consent of his said father, and in case of his death, for the sole use and benefit of his mother, for and during her life, to be managed, etc., with her advice and consent, and in case of her death for the sole use and benefit of the children of the joint bodies of said father and mother, during their natural lives, the trustees "to manage and rent said property as they

deem fit, by and with the advice and consent of the said" grantor, he being one of the children, "and in case of the death of said children the said trustees to hold said property for the sole use and benefit" of the grantor, "unto him, his heirs and assigns." After the death, first of the father, and then of the mother, the grantor obtained a quitclaim deed from the other children to himself, and then, by an ex parte proceeding, had a new trustee appointed, and he and the trustee conveyed the land to defendant's ancestor. The grantor was the last of the children to die, and the plaintiff in this suit is a son of one of the "children" mentioned in the deed, his claim being that that part of the trust for the use of "the children of the joint bodies," etc., created a joint tenancy in a class, and that the trust was in full force until the last child died, and until that time it was a continuing trust not executed by the statute of uses. *Held*, that, first, it is the duty of the court in trying to arrive at the true meaning of the deed, to put itself as near as may be in the situation of the grantor at the time he executed it; *second*, the grantor was not to be included in the class called "children" in the deed, since he designates himself to be the beneficiary after their death; third, the deed created a remainder in the grantor, and hence the deed thereafter made by him and his trustee after he had obtained a quitclaim from the other "children," conveyed the entire title and use, that is, the lifetime use and his remainder, and it would have conveyed the title equally as well had the trustee not joined therein.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Henry T. Kent* and *James W. Williams* for appellant.

(1) The trust deed of Isaac Drake McDowell of twenty-eighth of February, 1853, expressly reserved to himself a life estate as one of "the children of the joint bodies of the said Joseph N. McDowell and the said Amanda V. McDowell," and the remainder in fee after the death of said children vested in the heirs of the grantor, the plaintiff in this case.

Freeman on Co-Tenancy, sec. 110; Pratt v. Mining Co., 24 Fed. Rep. 869; Arthur v. Weston, 22 Mo. 378; Hamilton v. Pitcher, 53 Mo. 334; R. S. 1899, sec. 4590. (2) There was no power in Isaac Drake McDowell to mortgage anything more than his life estate. (3) The ejectment suit is no bar to a subsequent suit concerning the same property. Sutton v. Dameron, 100 Mo. 141; Spencer v. O'Neill, 100 Mo. 49; Swope v. Weller, 119 Mo. 556.

*John H. Overall* for respondent.

(1) The judgment for respondent in the case of appellant against respondent in the United States Circuit Court of Appeals, reported in 86 Fed. Rep. 235, on the record in which, and only on that record, this case was tried, is *res judicata* as to this action. There is no intention on the part of respondent to deny that the rule of law in this State is that a judgment in ejectment need not be regarded as entirely conclusive and a bar to a second action between the same parties, even if the titles and defenses in both actions are the same. It is true that in Foster v. Evans, 51 Mo. 39, this court says, "A judgment in ejectment is not a bar to another suit, or to defenses set up in a subsequent suit, unless the titles and defenses are precisely the same as they were in the first suit." The language of the judge who wrote the opinion in that case, was perhaps more comprehensive than he intended it should be, as is suggested by this court in Kimmel v. Benna, 70 Mo. 52, where it is mentioned as being "a remark of the learned judge who delivered the opinion of the court." Kimmel v. Benna overruled the broad declaration made in Foster v. Evans, and declared that a judgment in ejectment is no bar to a second action between the same parties for the same property, whether the titles and de-

fenses in both actions be the same or not, and the rule laid down in Kimmel v. Benna has been followed in Ehez v. Inge, 87 Mo. 493; Spencer v. O'Neill, 100 Mo. 49; Sutton v. Dameron, 100 Mo. 141, and Swope v. Miller, 119 Mo. 556. (2) In the construction of deeds, as of other contracts, the object is to ascertain the intention of the parties. Bean v. Kenmeier, 86 Mo. 666; Wolfe v. Dyer, 95 Mo. 545; Walton v. Drumtra, 152 Mo. 489; Lakeview Ex. v. Railroad, 36 Mo. App. 363; Jackson v. Meyers, 3 Johns. 387; 2 Devlin on Deeds, 855. (3) The plain interpretation of the trust deed in question is that the remainder of the estate should go to the grantor. Touchstone, p. 100; Hamilton v. Pitcher, 53 Mo. 334; Pratt v. Mining Co., 24 Fed. Rep. 869; 1 Beach on Trusts, 267; Devlin on Deeds, 184; Freem. Co-Ten., 110.

BURGESS, J.—This is an action of ejectment to recover the possession of one hundred and fifty feet of ground beginning at a point fifty feet north of the northwest corner of Eighth and Gratiot streets, in the city of St. Louis, and running north one hundred and fifty feet along the west line of Eighth street, by a depth of seventy feet, it being the same property upon which was formerly located what was known as the "McDowell College."

Isaac Drake McDowell is the common source of title. On February 28, 1855, he executed the following conveyance of the property:

"This deed made and entered into on this the twenty-eighth day of February in the year of our Lord, eighteen hundred and fifty-three, by and between Isaac Drake McDowell of the county of St. Louis and State of Missouri, party of the first part, and Hamilton R. Gamble, chief justice of the Supreme Court of the State of Missouri, Luther M. Kennett mayor of the city of St. Louis, and Edward C. Blackburn, president of

the board of aldermen of the council of said city, and their successors in office, respectively, parties of the second · part, and Joseph N. McDowell, Amanda V. McDowell and Anna W. McDowell, parties of the third part, witnesseth: that the party of the first part, for and in consideration of the sum of one dollar to him in hand paid by the parties of the second part, and in the further consideration of the love and affection which he bears to his father, the aforesaid Joseph N. McDowell, and to his mother, the aforesaid Amanda V. McDowell, and to his sister, the aforesaid Anna W. McDowell, hath this day granted, bargained and sold, and by these presents does grant, bargain and sell, unto the said parties of the second part, and their successors in office, the following lot or parcel of land lying and being in the city and county of St. Louis and State of Missouri, and bounded and described as follows, to-wit: Beginning at a point fifty feet north of the intersection of Gratiot and Eighth streets in the city of St. Louis, and running thence one hundred and fifty feet north to the property owned by the Christian Brothers, thence west eighty feet to Dillon's line, thence south one hundred and fifty feet to the property this day conveyed by Isaac Drake McDowell to Amanda V. McDowell and Anna W. McDowell, and thence eighty feet to the beginning, containing in all twelve thousand square feet, upon which is situated the medical department of the University of the State of Missouri, and the museum thereto attached, commonly known and called 'McDowell's College' and 'McDowell's Museum.' The said land being a portion of part of a lot of ground, conveyed by a certain deed recorded in book O6, page 33, in the recorder's office of the county of St. Louis, dated June —, in the year eighteen hundred and fifty-two, wherein Isaac Drake McDowell, the party of the first part, is grantee, and Frederick W. Beckwith, administrator of the estate of Thomas S. Smith, is grantor. To

have and to hold the said land with all and singular the privi-leges and appurtenances thereunto belonging unto the said parties of the second part, unto them and their successors in office forever. In trust, nevertheless, for the following pur-poses: The said parties of the second part and their success-ors in office, to hold the said property, for the sole use and benefit of Joseph N. McDowell during his natural life, the said property to be controlled, rented and managed by the said parties of the second part, their successors in office, as they may deem fit, by and with the advice and consent of the said Joseph N. McDowell. And in case of the death of the said Joseph N. McDowell, the parties of the second part, their successors in office, trustees as aforesaid, shall hold the said property for the sole use and benefit of Amanda V. McDowell during her natural life, said trustees to manage, rent, and con-trol said property as they may deem fit, by and with the ad-vice and consent of the said Amanda V. McDowell, and in the case of the death of the said Amanda V. McDowell, the trustees aforesaid shall hold the said property for the joint use and benefit of the children of the joint bodies of the said Joseph N. McDowell, and the said Amanda V. McDowell, his wife, during the natural lives of said children. The said trustees to manage and rent said property as they may deem fit, by and with the advice and consent of the said Isaac Drake McDowell, and in case of the death of the said children, the said trustees to hold said property for the sole use and benefit of the said Isaac Drake McDowell, the present grantor, unto him, his heirs and assigns forever."

Joseph N. McDowell, the father, and Amanda V. Mc-Dowell, the mother departed this life prior to August 23, 1866, leaving surviving them the following children of the joint bod-ies of the said Joseph N. and Amanda V. McDowell, to-wit: John J. McDowell, Charles N. McDowell, Anna W. McDow-

ell, and said Isaac Drake McDowell.

On the day last named the said John J. McDowell, Charles N. McDowell and Anna W. McDowell executed and delivered to Isaac Drake McDowell a deed, of which the following is a copy:

"Know all men by these presents that whereas, Isaac D. McDowell, of the city and county of St. Louis and State of Missouri, did execute and convey by a certain deed (which will appear on the records for St. Louis county) to the State of Missouri a certain piece of ground known and being as the property on which the McDowell Medical College is built and situated and being in the city and county of St. Louis and State of Missouri. In trust, however, for the benefit of John J. McDowell, Charles N. McDowell and Anna W. McDowell. Now, whereas, the State has not or never has accepted or complied with said trust of said deed. Therefore we, the said John J. McDowell, Charles N. McDowell, and Anna W. McDowell, having arrived at full age and discretion, do hereby for the sum of five dollars to us each in hand paid by the said Isaac D. McDowell, the receipt of which is hereby acknowledged, do hereby grant, sell, convey, release and forever quitclaim all rights, titles and claims singly and severally to the said Isaac D. McDowell, his heirs and assigns forever, and that we, the said John J. McDowell, Charles N. McDowell and Anna W. McDowell, our heirs and assigns, do forever warrant and defend unto the said Isaac D. McDowell, his heirs and assigns, the title to said premises so that neither we, the said John J. McDowell, Charles N. McDowell and Anna W. McDowell, nor our heirs, or any other person or persons for us or in our names and behalf, shall or will hereafter claim or demand any right or title to the premises or any part thereof, but that they and every of them shall by these presents be excluded and forever barred. In witness whereof, we have

hereunto set our hands and seals this twenty-third day of May, A. D. eighteen hundred and sixty-six."

At the February term, 1871, thereof, said Isaac Drake McDowell filed in the circuit court of St. Louis county an ex parte petition as follows:

"Your petitioner, Isaac Drake McDowell, respectfully states: that by deed dated the twenty-eighth day of February, A. D. 1853, and recorded in the records of deeds of St. Louis county, in book T6, page 18, your petitioner did convey the following described property, to-wit" (the property now in controversy):

"Your petitioner states that said property was by him conveyed to Hamilton R. Gamble, chief justice of the State of Missouri; Luther M. Kennett, mayor of the city of St. Louis, and Edward C. Blackburn, president of the board of aldermen of the council of the city of St. Louis, to have and to hold the same to them and to their successors in office for the following purposes, to-wit:

"To hold said property for the sole use and benefit of Joseph N. McDowell during his natural life, said property to be controlled, rented and managed by said parties and their successors in office as they may deem fit, by and with the advice and consent of Joseph N. McDowell, and in case of death of said Joseph N. McDowell, to hold for the sole use and benefit to Amanda V. McDowell, during her natural life, to manage the same in like manner with her consent, and in case of death of said Amanda V. McDowell, said trustees to hold for the joint use and benefit of the children of the joint bodies of said Joseph N. and Amanda V. McDowell, his wife, during the natural lives of said children, and to manage said property as they deem fit, by and with the advice and consent of said Isaac Drake McDowell, and in case of the death of said children, the said trustees to hold for the sole use and benefit of

said Isaac Drake McDowell, and his heirs and assigns forever.

"Your petitioner further states that Joseph N. McDowell, named in said deed, has departed this life; that Amanda V. McDowell, wife of Joseph N. McDowell, has also departed this life, and that at the time of her death the following were the children, and only children of the joint bodies of the said Joseph N. and Amanda V. McDowell, to-wit, John J. McDowell, Charles N. McDowell, Anna W. McDowell, and Isaac D. McDowell, your petitioner.

"That by deed dated the twenty-third day of May, 1866, and recorded in the records of deeds of St. Louis county, in book 316, page 382, John J. McDowell, Charles N. McDowell and Anna W. McDowell, being all at that time of age, and said Anna W. McDowell being then unmarried, did grant, sell, release and quit-claim to your petitioner all the right, title and claim to the above described premises, with special warranty against the claims of themselves and their heirs, whereby your petitioner became the only party beneficially interested in said property, and to whose use the same continues to be held by the trustees named in the conveyance first above mentioned.

"Your petitioner further states that Hamilton R. Gamble, chief justice of the State of Missouri, has long since departed this life; that no such office as chief justice of the State of Missouri is now known to the law, and that PHILEMON BLISS, presiding judge of the Supreme Court of the State of Missouri, refuses to act as trustee under said deed. That the Luther M. Kennett named in said deed as mayor of the city of St. Louis, has long since ceased to be mayor of the city of St. Louis, and is now absent from the State and beyond the seas, and that Nathan Cole, present mayor of the city of St. Louis, refuses to act as trustee under said deed. That Edward C. Blackburn, named in said deed as president of the board of aldermen of the council of said city, has long since departed

this life; that no such office is known to the law as president of the board of aldermen of the council of the city of St. Louis, and that Henry Overstolz president of the city council of the city of St. Louis, refuses to act as trustee under said deed.

"Your petitioner, therefore, prays that the court may appoint William Patrick, who is a suitable person, as trustee in said deed, to hold the property to the uses therein limited, in place of the original trustees, with power to do and perform all acts with the same force and effect as the original trustees might have done, and that he may have the same power and right to convey and dispose of such title as the original trustees had."

"On March 31, 1871, at the February term, 1871, of the circuit court of St. Louis county, the said petition was submitted to said court upon the proofs adduced, and the court, having heard and being fully advised thereof, found that the deed of February 28, 1853, was executed for the uses and purposes in said deed fully set out; that Isaac Drake McDowell, the petitioner, was then the only beneficiary under said deed; "that Hamilton R. Gamble has long since departed this life, and no such office as chief justice of the State of Missouri is now known to the law, and that PHILEMON BLISS, presiding judge of the Supreme Court of the State of Missouri refuses to act as trustee, under said deed. That the Luther M. Kennett named in said deed as mayor of the city of St. Louis, has long since ceased to be mayor of said city, and is now absent from the State and beyond the seas, and that Nathan Cole, the present mayor of the city of St. Louis, refuses to act as trustee under said deed. That Edward C. Blackburn, president of the board of aldermen of the council of the city, has long since departed this life, and that no such office is known to the law as president of the board of aldermen of the council of said city, and that Henry Overstolz, president of the city council

of the city of St. Louis, refuses to act as trustee under said deed. The court further finds that William Patrick is a suitable person to act as such trustee. The court, therefore, orders and adjudges that the said William Patrick be and he is hereby appointed trustee, to hold the property to the uses therein limited, with power to do and perform all acts with the same force and effect as the original trustees might have done, and that the title to said property be vested in him with the same power and right to convey such title as the original trustees had and would have."

On April 18, 1871, Isaac Drake McDowell and said William Patrick, appointed trustee as aforesaid, conveyed said property by deed of trust to certain trustees therein mentioned, to secure certain notes of said Isaac Drake McDowell, amounting to ten thousand dollars.

It is admitted that there was default in payment of the notes secured by said deed of trust and a sale had thereunder in pursuance of the terms of the deed of trust; that Thomas R. Patton became the purchaser of the property at such sale and received a deed therefor, and that, if Patton had the fee to the property, the same through mesne conveyances is well vested in the defendant and defendant entitled to judgment.

It is further admitted that Joseph N. and Amanda McDowell died prior to 1870, that all their children are dead, Isaac Drake McDowell dying last on January 5, 1882, and that the plaintiff is the son of Anna W. McDowell and nephew of Isaac Drake McDowell.

On May 27, 1897, plaintiff filed in the United States Circuit Court of the Eastern Division of the Eastern District of Missouri a petition against the defendant, praying for possession of the premises in question, and for damages against defendant, in the sum of twenty thousand dollars, for unlawfully withholding possession of said premises from him, and

five hundred dollars for monthly rents and profits. Trial was had in said cause and judgment rendered in favor of this defendant. Thereupon plaintiff sued out a writ of error to the United States Circuit Court of Appeals, Eighth Circuit, where the judgment of the court below was affirmed.

On the sixteenth day of May, 1898, plaintiff made an exact copy (except statement of venue) of the petition filed by him in the Federal court, and filed the same in the circuit court of the city of St. Louis. Defendant in its answer presented the same issues that had been presented in its answer in the Federal court, to-wit, that plaintiff was not entitled to the premises in question on January 1, 1890, that defendant had not ousted plaintiff on January 2, 1890, pleaded the statute of limitations, and presented the further issue of *res adjudicata*.

At the trial below, plaintiff, not as an agreed statement, but as of the nature of an agreed statement, submitted a complete record of the cause of the parties hereto in the United States Circuit Court of Appeals, Eighth Circuit. [86 Fed. Rep. 235.] Upon that record the court below rendered judgment in favor of defendant. From this judgment an appeal was taken to this court.

Defendant insists that the judgment in the case of plaintiff against it in the United States Circuit Court of Appeals, reported in 86 Fed. Rep. 235, on the record in which, and only on that record, this case was tried, is *res adjudicata* as to this action.

It was said in Foster et al. v. Evans, 51 Mo. 39, that "a judgment in ejectment is not a bar to another suit, or to defenses set up in a subsequent suit, unless the titles and defenses are precisely the same as they were in the first suit," clearly intimating that if the titles and defenses were precisely the same, that one judgment in ejectment would be a bar to an-

other of the same character, and for the same purpose, but a different rule was announced in Kimmel v. Benna, 70 Mo. 52, in which it was held that a judgment in ejectment is no bar to a second action between the same parties for the same property, whether the titles and defenses in both actions be the same or not. [See, also, Ekey v. Inge, 87 Mo. 493; Avery v. Fitzgerald, 94 Mo. 207; Spencer v. O'Neill, 100 Mo. 49; Swope v. Weller, 119 Mo. 556.] In Sutton v. Dameron, 100 Mo. 141, SHERWOOD, J., in speaking for the court said: "The well-settled rule of law in this State, notwithstanding an improvident *dictum* in Foster v. Evans, 51 Mo. 39, to the contrary, is, actions of ejectment though between the same parties having the same defenses concerning the same title and possession, and in all respects similar in their facts, may be maintained *ad infinitum,* so long as equitable defenses are not interposed and ruled upon, thereby converting the whole proceeding into an equitable one, and thus making the adjudication binding."

The real controversy in this case arises out of the true meaning and proper construction of the trust deed made by Isaac Drake McDowell, February 28, 1853, by which he conveyed the property involved in this litigation to trustees to hold for the sole use and benefit of Joseph N. McDowell, his father, during his natural life, to be controlled, rented and managed by the trustees, by and with the advice and consent of the said Joseph N. McDowell, and in case of his death, for the sole use and benefit of Amanda V. McDowell, mother of the grantor, to manage, etc., with her advice and consent, and in case of her death for the sole use and benefit of the children of the joint bodies of said Joseph N. and Amanda V. McDowell, trustees to manage and rent said property as they deem fit by and with the advice and consent of the said Isaac Drake McDowell, and in case of the death of said children the

said trustees to hold said property, for the sole use and benefit of the said Isaac Drake McDowell, the present grantor, unto him, his heirs and assigns forever.

Plaintiff's position is that the trust deed expressly reserved to the grantor, Isaac Drake McDowell, a life estate as one of "the children of the joint bodies of the said Joseph N. McDowell and the said Amanda V. McDowell," and that the remainder in fee, after the death of said children, vested in the heirs of the grantor, and he being the only heir surviving, that the title vested in Isaac Drake McDowell's heirs; in other words, that upon the making of said deed, the only interest the grantor reserved to himself was a joint use and benefit as one of the children of the joint bodies of Joseph N. and Amanda during his natural life.

On the other hand, defendant's position is that the trust deed, like any other contract, is to be construed according to the intention of the grantor, and that the manifest intention of the grantor in this instance was to create and carve out of his estate an active trust for the benefit of the parties mentioned, reserving to himself the fee. Defendant further contends that under a proper construction of the deed the beneficiaries of the trust were to be the grantor's father, mother, brothers and sisters; but further, that if, by any possibility, the grantor should be construed as one of the beneficiaries of the trust, with his brothers and sisters surviving the death of his father and mother, still as the grantor hereby reserved the fee to himself, plaintiff could not take unless the grantor died intestate not having aliened his estate.

When the language used in a deed is ambiguous or vague, or the terms employed are of uncertain meaning as to what was the actual intent of the grantor, there is no better way to arrive at his actual intent than to put ourselves, as near as may be, in the situation of the grantor at the time of the execution

of the instrument, as from this standpoint we are better situated to appreciate his motive in making the deed than if we endeavor to arrive at such intent under different circumstances.

In Walsh v. Hill, 38 Cal. 481, it is said: "In the construction of written instruments we have never derived much aid from the technical rules of the books. The only rule of much value—one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as nearly as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it."

And when in this connection the deed is construed as a whole, as it should be, giving due consideration to every part and portion of it, words of reservation as well as of grant (Wolfe v. Dyer, 95 Mo. 545), there ought not to be any serious difficulty in arriving at the true intent and meaning of the grantor in the deed.

In Jackson v. Meyers, 3 Johns. 394, it was said: "In the exposition of deeds the construction must be upon the view and comparison of the whole instrument and with an endeavor to give every part of it meaning and effect." [2 Devlin on Deeds, 837.] And "as in the case of all contracts, the intention of the parties to the deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law." [2 Devlin on Deeds, 855.]

Instead of giving to the language used in a deed or will an unbending or rigid interpretation, as was done by courts in former years, that rule has been broadened as the science of the law has advanced, so that now the language used in such instruments is construed so as to carry into effect the intention of the parties thereto, and not literally as written. [Bean v. Kenmuir, 86 Mo. 666; Walton v. Drumtra, 152 Mo. 489.] "The intent, when apparent, and not repugnant to any rule of

law, will control technical terms, for the intent, and not words, is the essence of any agreement." [Collins v. Lavelle, 44 Vt. 233; Carson v. McCaslin, 60 Ind. 337.]

Taking, then, this well-settled rule for the construction of deeds for our guide, what is the proper construction to be placed upon the deed of February 28, 1853, executed by Isaac Drake McDowell, creating certain express trusts. Did he intend to convey the property in trust: first, for the use of his father during his natural life; second, to the use of his mother during her natural life; and third, to the use of their children during their natural lives, with remainder over to the grantor's heirs? Or did the grantor intend by the deed to create a use in his father and mother during their natural lives, respectively, and then a use in his brothers and sisters during their natural lives, and thereafter for the sole use of himself, his heirs and assigns forever?

If the deed is to be construed as creating a use in the property in the father, mother and their children in the order named during their natural lives, with remainder over to Isaac Drake McDowell's heirs, then it may be conceded that the judgment in the court below should have been for plaintiff; but if upon the other hand, Isaac Drake McDowell only intended by that deed to create a use in his father and mother during their natural lives, and then a use in his brothers and sisters during their natural lives, and, thereafter for the sole use of himself, his heirs and assigns forever, the judgment was for the right party.

Plaintiff plants his right to the property upon what he sees proper to call the third trust in the deed, upon the death of Joseph N. and Amanda McDowell, the father and mother, which is this: "The trustee aforesaid shall hold said property for the joint use and benefit of the children of the joint bodies of the said Joseph N. McDowell and the said Amanda

V. McDowell, his wife, during the natural lives of said children, to manage and rent said property as they deem fit, by and with the advice and consent of the said Isaac Drake McDowell." The argument is that the third trust was an active one. That it created, by express words, a joint tenancy in all the children of Joseph N. and Amanda V. McDowell, and that the trust was in full force until the last child died, and until that time it was a continuing trust not executed by the statute of uses. It appears that the trustees were to hold the property for the joint use and benefit of a certain class or set of children, who are described as "children of the joint bodies of Joseph N. McDowell and Amanda V. McDowell, his wife, whose names the record shows to be John J., Charles, Anna and Isaac Drake, the grantor, and sustains plaintiff's contention in so far as that provision in the deed is concerned, but subsequent language in the deed, among which is, that it was provided that the trustees shall "manage and rent said property as they deem fit, by and with the advice and consent of said Isaac Drake McDowell," clearly indicated that he was not intended to be included among the children for whose use after the death of their parents the deed was executed. During the lifetime of the father, the said property was to be controlled, rented and managed by the said parties of the second part, their successors in office, as they may deem fit, by and with the advice and consent of the said Joseph N. McDowell. The same provision in regard to the management of the property was made with respect to the mother, that is, the trustees were to manage it with her advice and consent. And in case of her death it is provided in said deed that "the trustees shall hold said property for the joint use and benefit of the children of the joint bodies of the said Joseph N. McDowell and the said Amanda V. McDowell, his wife, during the natural lives of said children. The said trustees to manage and rent said

property as they deem fit by and with the advice and consent of the said Isaac Drake McDowell, and in case of the death of said children the said trustees to hold said property for the sole use and benefit of the said Isaac Drake McDowell the present grantor unto him, his heirs and assigns forever."

In this connection it was said in the case of Speed v. St. Louis, M. B. T. R. Co., 86 Fed. Rep. 235, that: "The term 'said children' is most significant. It refers back, of course, to the children named in the third clause of the deed. By this expression the grantor quite clearly indicated that it was not in his mind to include himself in the clause of 'children born of the joint bodies of said Joseph N. McDowell and Amanda V. McDowell.' If so, why should he have provided specifically for himself by name in the fourth and last trust? He was still dealing with the class designated in the third trust as 'the children,' and it would be as palpably absurd as contradictory to say that he was providing for an estate in himself after he was dead. Had it been the purpose of Isaac Drake McDowell to reserve to himself a life estate only, he would have indicated it by some such words as the following: And in case of the death of said children, the said trustees to hold said property for the sole use and benefit of the heirs of said children. Or, if he had desired to limit the use of his own heirs he would have said: To the sole use and benefit of the heirs of said Isaac Drake McDowell. This, under the statute, on the termination of the life estate, would have entitled the heirs 'to take as purchasers by virtue of the remainder so limited in them.' [Rev. Stat. 1845, c. 32, sec. 7; Rev. St. Mo. 1889, sec. 8838.] Instead of this, however, 'after the death of said children,' he expressly reserved the sole use and benefit 'to Isaac Drake McDowell, the grantor, his heirs and assigns forever.' These are apt words to create an estate in fee simple absolute.

"The contention of plaintiff renders useless the entire provision of the fourth clause of the trust, inasmuch as it was not at all necessary (as we have already shown) to reserve thereby to the grantor a mere life estate; whereas, under the other construction, vitality and operation are given to every part of the instrument—first, a use for life to the father and mother; then, a use for life to their children; and thereafter the remainder to the grantor, his heirs and assigns, forever. While the plaintiff, as the child of the sister, in the event of Isaac Drake McDowell dying intestate, seized of the land, would have been his heir, yet, inasmuch as in his lifetime Isaac Drake McDowell conveyed his title, it vested in the assignee. On the death of 'said children' the entire beneficial interest vested in Isaac Drake McDowell. Therefore, the trust became a dry trust, and on the recognized doctrine that, as the extent of the trustee's title is to be measured rather by its object than the words of the trust, and it 'can not be carried further than the complete execution of the trust necessarily requires,' the trustee had no active duty to perform, and, therefore, it was not essential that the trustee, Patrick, should have joined Isaac Drake McDowell in the execution of the deed of trust under which defendant claims. In such event there was nothing left in the trustee but a naked use, which the statute of uses at once executed in the plaintiff. [Roberts v. Moseley, 51 Mo. 282; Pugh v. Hayes, 113 Mo. 424.]"

But plaintiff insists that the record discloses additional facts that should not be overlooked, growing out of the proceedings in the circuit court of St. Louis, for the appointment of a trustee, in the place of Gamble and others, which occurred eighteen years after the trust deed of February, 1853, was made. That Isaac Drake McDowell in his petition for the appointment of a trustee in the place of Gamble, which was

Vol 163 mo—9

signed and sworn to by him, sets out the making of the deed of February 28, 1853, and the different trustees to his father and mother, and afterwards to the "children of their joint bodies;" and then, it is said, "your petitioner further states that Joseph N. McDowell, named in said deed, has departed this life; that Amanda V. McDowell, wife of Joseph N. McDowell, has also departed this life, and that at the time of her death the following were the children, and only children, of the joint bodies of the said Joseph N. and Amanda V. McDowell, to-wit; John J. McDowell, Charles N. McDowell, Anna W. McDowell, and Isaac D. McDowell, your petitioner."

Plaintiff argues that there is nothing in the language used by the grantor eighteen years after the deed from which we might infer that it was not his intention to participate in the joint use and benefit of the property. That he not only reiterates that the third trust was for the use and benefit of the children of the joint bodies of his parents, but he proceeds to say who they were, naming each, including himself. The petition then further sets out that on May 23, 1866, his sister and brothers conveyed all their interest to him (Isaac Drake), "whereby your petitioner became the only party beneficially interested in said property, and to whose use the same continues to be held by the trustees named," etc. That there was nothing in this language to indicate that having acquired, according to the defendant's theory all the life interests outstanding, namely, that of his two brothers and sisters, that he was then possessed of the fee, but on the contrary the language imports that he was the only party now in the use and enjoyment of said property. "to whose use the same continues to be held by the trustee."

This is the construction plaintiff contends for, that is, assuming that his brothers Charles and John and his sister conveyed all their interest to Isaac Drake by the deed of May

23, 1866, then Isaac Drake was the only 'beneficiary of the third trust, for whom, as he says, "the same continues to be held by the trustee." How long was it to continue ? Under the facts disclosed by the record it was to continue until January 5, 1882, the date of the death of Isaac Drake, the last survivor. The proceedings, it will be observed, were ex parte. The Court, amongst other things, found "that Isaac Drake McDowell, the petitioner, is now the only beneficiary in said deed...... The court therefore orders and adjudges that the said William Patrick be and is hereby appointed trustee to hold the property to the uses therein limited," etc. This finding was true, namely, that Isaac Drake, having acquired the life interest of his brothers and sisters, which was three-fourths, and he under the terms of the trust being entitled to the remaining fourth for life, now becomes the sole beneficiary of what we have designated heretofore as the third trust.

The decree does not find that Isaac Drake was the owner of the fee, and even if it had in direct terms it would not have been binding upon the plaintiff, Wm. K. Speed, who was not before the court, indeed, who was not known until after the death of Isaac Drake, being "an heir not ascertained until that event."

But the habendum clause to the deed of trust thereafter made by Isaac Drake McDowell to Ranken and Obear, trustees, which is as follows: "To have and to hold the same, with the appurtenances, to the said parties of the second part, and to the survivor of them, and to their successor, and to the assigns of the said parties of the second part, or of said successor, or survivors, forever," overcomes any recitals which may seem favorable to plaintiff in the petition of McDowell for the appointment of a trustee in place of Gamble.

It is also provided in the deed of trust from Isaac Drake McDowell to Rankin and Obear, that in case of the sale of the

property by the trustees or either of them under the deed of trust that the trustee making the same "shall execute and deliver a deed or deeds in fee simple of the property sold to the purchaser thereof;" which is utterly inconsistent with the idea that he did not have in himself the fee thereto, which together with other facts to which we have alluded satisfies us that it was the intention of Isaac Drake McDowell to retain in himself the title in fee to the property.

The fact that the trustee had no power to place a mortgage upon the property does not help plaintiff's case.

For reasons indicated the judgment is affirmed. *Sherwood, P. J.,* and *Gantt, J.,* concur.