## CALDWELL v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division Two, May 10, 1904.

1. **NEGLIGENCE: Switchman: No Substantial Evidence.** A switchman communicated to the engineer the usual signal to back up, so that he might couple some cars. The engineer promptly complied, slowly and in the usual manner backed up the engine, and the switchman was caught between the drawheads and killed. The evidence showed that there was ample room on each side of the drawheads for him to have stood and made the coupling in safety, and no negligence on the part of the engineer or other employees in charge of the train is shown. *Held,* that the demurrer to the evidence should have been sustained. *Held,* also, that the evidence shows that the switchman's death was due to his own contributory negligence in going between the drawheads.

2. ———: **Prima Facie Case: Statute: Contributory Negligence.** The employee of a railroad does not, under the statute (sec. 2875, R. S. 1899), make out a prima facie case of negligence against the company by showing that he was a switchman of the company and was injured by the coming together of cars.

That statute requires the injured party to show that his injuries were due to the negligence of some agent or servant of the company. It also permits the company to show in defense that the injured person was guilty of contributory negligence.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Elijah Robinson* for appellant.

(1)　The court should have directed a verdict for defendant: There was not a particle of evidence in the case tending to show negligence on the part of the defendant; and when there is no substantial evidence to establish the facts which it is incumbent upon the plaintiff to prove, the court should direct a verdict for the defendant. Powell v. Railroad, 76 Mo. 80; Landis v. Hamilton, 77 Mo. 554; Jackson v. Hardin, 83 Mo. 175; Avery v. Fitzgerald, 94 Mo. 207; Long v. Moon, 107 Mo. 338; Havens v. Railroad, 155 Mo. 216. Where the evidence is of such character that a verdict must necessarily be based upon mere guess-work or conjecture upon the part of the jury, the court should direct a verdict for the defendant. Moon v. Railroad, 28 Mo. App. 262; Peck v. Railroad, 31 Mo. App. 123; Railroad v. Shertle, 97 Pa. St. 450. The simple fact of the accident having occurred is not evidence of negligence. Cooley v. Torts (2 Ed.), 92; Sheldon v. Sherman, 42 N. Y. 484; Roynton v. Rees, 9 Pick. 527; Express Co. v. Smith, 33 Ohio St. 511; Burton v. Davis, 15 La. Ann. 448; Brown v. Collins, 53 N. H. 442; Hanlon v. Ingram, 3 Ia. 81; Richards v. Rough, 53 Mich. 212. The rule *res ipsa loquitur* does not apply in this case. Gallagher v. Edison Co., 72 Mo. App. 576. (2)　The evidence shows clearly that plaintiff's husband was guilty of contributory negligence, without which the accident would not have occurred. Railroad v. Estes, 37 Kan. 731; Lothrop v. Railroad, 150

Mass. 423; Culbertson v. Railroad, 88 Wis. 569; Burk v. Edison Co., 89 Hun 501.

*John N. Southern* and *S. W. Hilt* for respondent.

(1)    Plaintiff's prima facie case was ample to take the case to the jury, but had it not been, the appellant by not standing on its demurrer and declining to introduce testimony on its own behalf, cured the defect.  Peacock, whose deposition was read by appellant, testified that Caldwell did not give any signal from between the cars.  When defendant introduced this evidence the consideration of the demurrer extended so as to include it and any other facts in his testimony and the testimony of any other witness in the case.  Gallagher v. Edison Co., 72 Mo. App. 578; Hilz v. Railroad, 101 Mo. 36; Jennings v. Railroad, 112 Mo. 268; Whitaker, Smith on Negligence, chap. 6, pp. 419, 429; King v. Oil Co., 81 Mo. App. 155; Clark v. Railroad, 93 Mo. App. 456; Mirrielees v. Railroad, 163 Mo. 486.   (2) The demurrer to plaintiff's evidence was properly overruled.   There was uncontradicted evidence from which the jury could properly infer negligence on the part of the defendant. Keown v. Railroad, 141 Mo. 87; Land and Lumber Co. v. Tie Co., 79 Mo. App. 543; Moore v. Railroad, 73 Mo. 438.   (a)   Negligence is not a fact that is subject to direct proof, but is an inference from facts put in evidence, and when different minds might honestly draw different conclusions from the evidence the case should properly be left to the jury.   Baird v. Railroad, 146 Mo. 282; Degge v. Express Co., 64 Mo. App. 102; Green v. Cooperage Co., 50 Mo. App. 202; Hamed v. Railroad, 51 Mo. App. 482; Chum v. Railroad, 55 Mo. App. 163; Reed v. Railroad, 94 Mo. App. 38.   (b)   The demurrer at the close of all the evidence was properly overruled. The plaintiff was entitled to have the judgment of the jury on the credibility of witnesses produced by the defendant and the value of their testimony.   Gibson v.

Zimmerman, 27 Mo. App. 90; Gannon v. Gas Light Co., 145 Mo. 502; Hadley v. Orchard, 77 Mo. App. 141; Freeman v. Pratt, 66 Mo. App. 283; Clark v. Shrimski, 77 Mo. App. 166; Gregory v. Chambers, 78 Mo. App. 294; Vogta v. Pilikan, 15 Mo. App. 471; Ross v. Clark, 14 Mo. App. 594.

BURGESS, J.—This is an appeal from a judgment of the Jackson circuit court in favor of the plaintiff, in the sum of five thousand dollars, for the death of her husband, Gideon Caldwell, as a result of the alleged negligent and unskillful management of the defendant's agents and employees in charge of the engine and freight cars attached thereto, by reason of which plaintiff's husband was caught between two of said freight cars and killed. The deceased was a brakeman upon the train which caused his death.

"Plaintiff's husband was killed at Pixley Station, on the line of defendant's railway, a short distance east of Independence, Missouri, about 7:30 a. m., on the sixteenth day of December, 1899. He was an experienced railroad man, and, at the time of his death, was in the employ of the defendant as a switchman. From Pixley Station, the point where the accident occurred, to Independence, there is a considerable up-grade, so that engines pulling heavy trains were accustomed to leave a part of the cars at said station, to be subsequently taken up the hill by another engine. The night before plaintiff's husband was killed a number of cars were placed on the side track at said station, and early the next morining the switch crew, of which the deceased was a member, went from Independence to Pixley Station for the purpose of taking these cars to Independence. The crew was composed of Noah Storms, foreman; Caldwell, plaintiff's husband, and Peacock, switchmen; E. I. Gorsuch, engineer; and J. H. Sechrist, fireman. They all went to Pixley Station in the switch engine and when they arrived there the engineer ran

the engine on the side track where these coal cars were standing, and it was coupled to the car at the west end of the string. This was done either by Peacock or Caldwell, it being a duty that might properly be performed by either of them.

"Thereupon, Storms, the foreman, Peacock and Caldwell started east along the south side of said string of cars, Storms to take a memorandum of the numbers of the cars, and Caldwell to inspect the cars and see that they were in good condition. There were some eighteen or twenty cars in the string on the side track, but they intended to move only eleven of them. A portion of those which they intended to move were coal cars, and a portion of them box cars, the coal cars being at the west end of the string, next to the engine. All three of them went west along the south side of said string of cars until they reached the first box car, and then Peacock got on this box car for the purpose of releasing the brakes. He proceeded east along the tops of the cars, releasing the brakes, until he reached the eleventh car from the engine, that being the easternmost car of those which were to be moved. Storms and Caldwell proceeded east along the south side of the cars until they reached said box car. Thereupon Storms gave a signal for the engine to move forward, in response to which the engineer did move the engine forward but only about twenty feet when he discovered that the train had parted between the third and fourth cars from the engine—that is, that only the three cars next to the engine were moving, the other cars not having moved at all. The engineer immediately stopped the engine, and it remained standing until he got a signal to back up to the cars which had not been moved.

"When Caldwell discovered that the cars had parted, he went forward and went in between the cars that had parted, the third and fourth cars from the engine. He had remained there a short time when he gave a signal for the engine to back up. He gave this

signal from the south side of the cars, and that being the
fireman's side of the engine he received the signal and
communicated it to the engineer. Thereupon the
engineer moved the engine back slowly until the cars
came together. Storms, who was still near the rear end
of the string which they intended to move, discovering
that Caldwell did not come from between the cars, as
he should have done, went forward to see what the
trouble was. When he reached the point of the acci-
dent he found that Caldwell's body had been caught be-
tween the drawheads of the third and fourth cars, and
he immediately gave the engineer a signal to move for-
ward, and when he did so Caldwell's body, being re-
leased, fell to the ground, and it was discovered that he
was dead.

"It was shown by the evidence of plaintiff as well as
that of the defendant, that the movements of the engine
were always under the control of the switchmen when
they were switching cars and making couplings. Gor-
such, the engineer, was sworn as a witness on behalf of
the plaintiff, and testified that after the cars had sepa-
rated, as above stated, he stopped the engine and re-
mained standing until he received a signal from the fire-
man to back up, and that thereupon he did back up
very slowly, and in the customary way of doing such
work. Sechrist, the fireman, testified that he received
the signal from Caldwell to back back, and immediately
communicated the same to the engineer, who was on the
north side of the engine so that he could not see Cald-
well. Peacock, who, at the time of the accident, was
standing on top of the eleventh car, testified that he saw
Caldwell give the signal to back up. In response to a
question by counsel for plaintiff, he testified that he
did not give any signal to back up, and that it would not
have been any part of his duty to do so, as he was seven
or eight car-lengths from where Caldwell was endeavor-
ing to make the coupling. Storms testified that he gave
no signal to back up.

"The petition alleged that while plaintiff's husband was standing between the drawheads of the third and fourth cars, engaged in the discharge of his duties, defendant's agents and servants in charge of said engine and cars attached thereto as aforesaid, negligently and unskillfully moved said engine and cars eastward, so that the rear car so moved struck plaintiff's husband. This was the only allegation of negligence set forth in the petition.

"The uncontradicted evidence further showed that there was no occasion for Caldwell to stand between the drawheads in discharging his duty as a switchman; that if he had stood between the cars on either the north or south side of the drawheads, there would have been a space of from three to six inches between him and the end of the car on either side of him when the drawheads came together; that if he had stood on either the north or south side of the drawheads, instead of standing between them, the accident would not have occurred.

"The court refused to direct a verdict for the defendant at the close of plaintiff's evidence, and again at the close of all the evidence in the case.

"Nine of the jurors signed the verdict for plaintiff, the other three being for the defendant. Defendant in due time filed its motion for new trial and motion in arrest of judgment, both of which being overruled, it appealed to this court."

The paramount question in this case is as to whether or not there was any substantial evidence to entitle plaintiff to have the case submitted to the jury. Upon this view of the case the defendant asked the court at the conclusion of plaintiff's evidence, and again at the close of all the evidence in the case, to direct a verdict for defendant, but this request was refused. We have looked in vain through this record to find *some* evidence of a substantial character which tends to show negligence upon the part of the defendant, its agents or servants, and must confess our

utter inability to do so. Upon the contrary the evidence clearly shows that the signal to back up was given by deceased himself to the fireman, and was immediately communicated by him to the engineer, who, in compliance therewith, backed up the cars slowly and in the usual and ordinary way. The signal was given to the engineer through the fireman instead of to the engineer direct, because of the fact that he and the engineer were upon opposite sides of the train and could not see each other. It was, therefore, the only way that it could be communicated to the engineer. There was no pretense, however, that the engineer was careless or negligent in backing the train, nor was there one iota of evidence that any of the employees of defendant, other than the deceased himself, were guilty of negligence, contributing to his death. It devolved upon the plaintiff in order to entitle her to recover to sustain by proof some act of negligence upon the part of defendant's servants or employees directly contributing to the death of her husband, and having failed in this, the court should have directed a verdict for defendant. [Powell v. Railroad, 76 Mo. 80; Avery v. Fitzgerald, 94 Mo. 207; Long v. Moon, 107 Mo. 338.] Not only did plaintiff fail to show any negligence upon the part of defendant's employees, but the evidence adduced tended strongly to show that deceased was guilty of negligence, contributing directly to his own death, in going between the drawheads of the cars, when he should have stood to one side of them, which is the usual and proper way, and practically safe, and thus have escaped injury.

But it is argued that as the death of plaintiff's husband was caused by the coming together of the cars, the death so caused was prima facie negligence of the company. This we are satisfied is not the law under the circumstances of this case unless made so by section 2873, Revised Statutes 1899 (Laws 1897, p. 96), but that statute only applies to damages sustained by any agent or servant of a railroad while engaged in the work of

operating such railroad by reason of the negligence of some other agent or servant thereof, and has no application to the case at bar, for the very cogent reason that the injury in question was not occasioned by the negligence of any other agent or servant of defendant company. Moreover, this statute provides that it may be shown in defense of such an action that the person injured was guilty of negligence contributing as a proximate cause to produce the injury, and this the evidence shows beyond any question that deceased was guilty of.

For these intimations the judgment should be reversed. It is so ordered. All of this division concur.